## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

LEAGUE OF WOMEN VOTERS OF
LOUISIANA; LEAGUE OF WOMEN
VOTERS OF LOUISIANA EDUCATION
FUND; VOICE OF THE EXPERIENCED;
NAACP LOUISIANA STATE
CONFERENCE; and POWER COALITION
FOR EQUITY AND JUSTICE,

      *Plaintiffs,*

     v.

NANCY LANDRY, *in her official capacity as
Secretary of State for Louisiana*; DAVID N.
MATLOCK, *in his official capacity as
Secretary of the Department of Children &
Family Services*; MICHAEL HARRINGTON,
*in his official capacity as Secretary of the
Department of Health*, DR. CADE
BRUMLEY, *in his official capacity as
Superintendent of Education for the
Department of Education*; SUSANA
SCHOWEN, *in her official capacity as
Secretary of the Workforce Commission*; and
MISTI S. CORDELL, *in her official capacity
as Chairwoman of the Board of Regents*,

      *Defendants.*

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs League of Women Voters of Louisiana and League of Women Voters of Louisiana

Education Fund (together, "LWVLA" or "the League"), Voice of the Experienced ("VOTE"),

National Association for the Advancement of Colored People Louisiana State Conference

("Louisiana NAACP"), and Power Coalition for Equity and Justice ("Power Coalition," or

"PCEJ"), bring this action against Nancy Landry, in her official capacity as Secretary of State for

Louisiana; David N. Matlock, in his official capacity as Secretary of the Department of Children & Family Services; Michael Harrington, in his official capacity as Secretary of the Department of Health; Dr. Cade Brumley, in his official capacity as Superintendent of Education for the Department of Education; Susana Schowen, in her official capacity as Secretary of the Workforce Commission; and Misti S. Cordell, in her official capacity as Chairwoman of the Board of Regents, and allege the following:

## INTRODUCTION

1.      This case challenges Louisiana's S.B. 436, which purports to require proof of citizenship for voter registration beyond what federal law allows. Plaintiffs' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501, et seq.

2.      A hackneyed solution in search of a phantom problem, S.B. 436 stands to chill voter registration activity and disenfranchise Louisiana's most vulnerable voters. S.B. 436 was rushed through the Louisiana Legislature despite no evidence of alleged voting by ineligible noncitizens and Defendant Landry's own admission that the State has successfully relied on the attestation of the voter to confirm citizenship. Although it solves no problems, S.B. 436 creates many. S.B. 436's vague terms pose a threat to eligible voter registrants and those who assist them.

3.      S.B. 436 provides that each Louisiana voter registration applicant "shall include with his application proof of United States citizenship." This vague language invites Defendants and other agencies involved in voter registration to unlawfully require additional documentation to register to vote. Especially in light of Defendants' failure to provide guidance, the nebulous terms of S.B. 436 will chill voter registration and Plaintiffs' voter registration activities. As such, S.B. 436 is void for vagueness under the First and Fourteenth Amendments to the U.S. Constitution.

2

4.      Moreover, the NVRA, which Louisiana is subject to, only allows States to require information "necessary" to verify eligibility. Furthermore, the NVRA does not allow Louisiana to require additional documentation to register to vote using the Federal Form. S.B. 436, if implemented to require additional documentation to prove citizenship, would flagrantly violate the NVRA.

## JURISDICTION AND VENUE

5.      This action is brought under the United States Constitution, 52 U.S.C. § 20507 *et seq.* (the National Voter Registration Act of 1993), 42 U.S.C. § 1983, and 42 U.S.C. § 1988. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because the claims in this action arise under the laws of the United States. This Court also has jurisdiction under 28 U.S.C. §§ 1343(a)(3), 1343(a)(4), and 1357.

6.      This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Court has personal jurisdiction over the Defendants because they are citizens of Louisiana.

8.      Venue is proper under 28 U.S.C. § 1391(b) because at least one defendant resides in this district and all defendants are residents of the State of Louisiana, and because a substantial portion of the events or omissions giving rise to these claims occurred in this district.

## PARTIES

### Plaintiffs

9.      Plaintiffs **LEAGUE OF WOMEN VOTERS OF LOUISIANA** and **LEAGUE OF WOMEN VOTERS OF LOUISIANA EDUCATION FUND**, formed under Section 501(c)(4) and Section 501(c)(3) of the Internal Revenue Code, respectively, are the Louisiana

3

affiliates of the League of Women Voters ("LWV"). LWV's grassroots campaign for national voter registration reform was integral to the passage of the NVRA.

10.     Formed in the 1940s, LWVLA is a volunteer-run non-partisan, non-profit organization that seeks to encourage informed and active participation in government.

11.     LWVLA has six chapters in Louisiana: LWV of New Orleans, LWV of St. Tammany, LWV of Lafayette, LWV of Caddo-Bossier, LWV of Iberia, and LWV of Tangipahoa. Each local League is a member of LWVLA, and all members of the local Leagues are members of LWVLA.

12.     The League works to ensure that all eligible individuals have the opportunity and the information needed to register and vote, with a particular focus on traditionally underrepresented and underserved communities who benefit the most from additional education and assistance, including voters of color, first-time voters, low-income voters, newly naturalized citizens, young voters, and voters impacted by the criminal legal system, including individuals with felony convictions seeking to register to vote after their rights have been restored.

13.     The League's members include individuals across the state of Louisiana who share in its mission to educate and engage eligible voters and encourage all residents to actively participate in Louisiana's political process.

14.     Voter registration is LWVLA's signature activity and core to its mission. The League works to register voters across Louisiana, with a particular focus on the parishes in which local Leagues operate. In line with its mission to focus its resources on communities who benefit the most from additional education and information, the League also spends significant resources registering voters of color in Louisiana's newly drawn Sixth Congressional District to help ensure that Black voters who had been largely marginalized in the political process are able to exercise

their right to vote and elect representatives of their choice. LWVLA also expends considerable resources educating voters about voter registration requirements.

15.     The bulk of the League's registration events take place in the late summer and early fall of election years. These drives include registration events at high schools, community events, and festivals (e.g., Latin Festival, Pride Parade) throughout the state. The New Orleans chapter of LWVLA also hosts weekly voter registration events throughout the year to register naturalized citizens, including at naturalization ceremonies that take place at the U.S. Citizenship and Immigration Services office. At these drives, LWVLA volunteers typically guide applicants through the voter registration process, answer questions, and ensure that applications are completed correctly. LWVLA volunteers then ensure that the applications are submitted correctly to the parish registrar in accordance with Louisiana law.

16.     When registering voters using paper applications, the League uses the Louisiana state voter registration form. However, LWVLA is generally phasing out the use of paper voter registration applications at registration drives in favor of online registration accessed through tablets purchased by LWVLA chapters. Certain chapters continue to rely on paper voter registration applications, including LWV of New Orleans, which prefers to use paper registration applications when registering naturalized citizens.

17.     Upon information and belief, many of the prospective voters that LWVLA assists in its voter registration activities are individuals who interact with public assistance agencies, including low-income and low-information voters. LWVLA anticipates that if these offices require some form of documentary proof of citizenship before registering eligible applicants to vote, many applicants will be unable to provide such proof at the time of their interaction with the agency, and this will increase the number of prospective voters that LWVLA must assist and increase the time,

effort, and resources required to assist them in registering, if LWVLA volunteers are able to do so at all.

18.    LWVLA's Iberia and Lafayette Leagues are also in the planning stages of conducting voter registration in jails and plan to undertake these registration activities in the near future, depending on how S.B. 436 is implemented.[1]

19.    Assuming it could continue any of its voter registration activities, because S.B. 436 does not define what constitutes proof of citizenship and does not explain how it must be submitted, including whether the proof of citizenship provision applies to online voter registration, the League is unable to plan for future voter registration events and is concerned that it will be unable to register voters altogether ahead of upcoming elections. The League needs to plan for voter registration activities well in advance—including allocating funds or other necessary resources, organizing and training volunteers, and purchasing or otherwise procuring voter registration equipment—and it is unable to make these key decisions when it does not know when or how Louisiana will implement or enforce S.B. 436.

20.    Particularly if S.B. 436 requires more than attestation under penalty of perjury of citizenship, S.B. 436's implementation of proof of citizenship requirements will significantly frustrate LWVLA's core mission of registering voters. LWVLA anticipates that it will be

---

[1] In Louisiana, individuals who are incarcerated pretrial and otherwise eligible to vote are permitted to register and vote absentee by mail. La. Stat. Ann. § 18:1303(G). According to a 2020 report, Louisiana has the "highest pretrial incarceration rate of any state on record since 1970, and a rate more than three times the national average." *Justice Can't Wait: An Indictment of Louisiana's Pretrial System* at 7, ACLU of Louisiana (Feb. 10, 2020), https://www.laaclu.org/en/justice-cant-wait-indictment-louisianas-pretrial-system. Louisiana's trend of high pretrial incarceration rates has continued since then. *See, e.g.*, Richard A. Webster, *As critics note problems of mass incarceration, local jails add more beds*, Louisiana Illuminator (Apr. 7, 2023), https://lailluminator.com/2023/04/07/as-critics-note-problems-of-mass-incarceration-local-jails-add-more-beds/. Many of those detained pretrial remain eligible to vote.

6

functionally unable to register voters if volunteers are required to demand documentary proof of citizenship from prospective registrants.

21.     The League understands that Louisiana law prohibits any person from retaining copies of voter registration applications "[f]or purposes other than fulfilling the person's duties relative to registration of voters," *see* La. Stat. Ann. § 18:1461.2(A)(9). At the same time, S.B. 436 requires proof of citizenship. The League is concerned that it would not be able to maintain complete records of the documentation collected and submitted for the voters it assists to register. Specifically, the League would be unable to demonstrate, if required, that its volunteers collected or checked for any proof of citizenship required by S.B. 436 before registering voters. LWVLA is concerned this would open LWVLA up to accusations of impropriety and potential lawsuits. LWVLA therefore anticipates it will largely need to shift from voter registration to voter education and information if S.B. 436 is interpreted as requiring the submission of documentary proof of citizenship along with each voter registration application.

22.     Based on its experience registering voters, the League is deeply concerned that prospective voter registration applicants will be distrustful of any attempt by League volunteers to copy, collect, or inquire into sensitive personal information. LWVLA seeks to maintain its position as a trusted community partner and is worried that collecting proof of citizenship to register voters will open the organization up to security and liability concerns, as well as reputational harm. The League also expects many of these community members will be concerned about the security of providing sensitive personal information and documentation over the internet such that they may choose not to register. These concerns from community members and the League's need to maintain its reputation as a trusted partner in the voting and elections space will inhibit the League from engaging in its signature organizational activity—voter registration.

23.    Even if the League could develop a workable policy to collect proof of citizenship during voter registration drives, and further assuming that scans or copies of any required proof of citizenship would satisfy S.B. 436's requirements, the organization does not currently have the allocated resources to procure secure mobile scanners and printers to submit copies of proof of citizenship along with voter registration applications. The League anticipates that S.B. 436's proof of citizenship requirement will cause the League's core voter registration services to grind to a halt.

24.    Moreover, even if League volunteers manage the logistical, financial, and other risks of collecting any required documents from applicants, it is unlikely that prospective registrants will have proof of citizenship on their person at registration events. Because the League conducts voter registration drives at community events with the goal of completing voter registrations on-site, potential League members and voters who do not have proof of citizenship with them cannot fully participate. LWVLA would therefore be unable to collect and submit completed voter registration applications at its registration events, frustrating its mission.

25.    The League will also need to divert significant resources from its core activities, including voter registration activities, to educate its constituents and other community members about how to register to vote under S.B. 436's new proof of citizenship requirement.

26.    The League will need to divert significant resources to provide additional voter education about what the law requires that it would not otherwise have to provide. This will involve social media outreach and purchasing and distributing physical materials at voter education events. LWVLA anticipates that it will need to greatly increase its educational activities to support voters who are unaware of how to comply with new registration requirements, at the expense of the League's traditional registration activities. The League also plans to explore the possibility of

providing additional education and/or direct support to prospective voters who need assistance procuring proof of citizenship, depending on how S.B. 436 is implemented.

27.    LWVLA members would also face substantial burdens in complying with S.B. 436's proof of citizenship requirements. LWVLA has members who are currently registered to vote but anticipate updating their registration due to a move, change in party affiliation, or name change. These members would be forced to provide proof of citizenship with their updated registration application under S.B. 436.

28.    LWVLA expects that many of its members and the community members that it seeks to register to vote, including young people, naturalized citizens, individuals who changed their name after getting married or divorced, and voters of color will face onerous, often insurmountable barriers to obtaining and providing proof of citizenship. Specifically, it expects that many members and community members it seeks to register to vote do not currently possess common forms of proof of citizenship reflecting the individual's current name. LWVLA further expects that these individuals will face significant financial and logistical hurdles in attempting to obtain proof of citizenship and may not be able to do so at all.

29.    Plaintiff **VOICE OF THE EXPERIENCED** is a nonpartisan, grassroots nonprofit organization founded and operated by formerly incarcerated people.

30.    VOTE has three chapters across Louisiana in New Orleans, Baton Rouge, and Lafayette, and advocates to restore the full human and civil rights of people who are incarcerated and people who are formerly incarcerated. This includes, but is not limited to, working in the areas of voting rights, medical rights, and employment rights.

31.    VOTE conducts voter registration drives among the eligible population within jails, including in Orleans and East Baton Rouge parishes. VOTE relies on Louisiana's state paper voter

registration application for its jail voter registration work. VOTE also conducts voter registration drives outside of jails, including on college campuses. VOTE typically relies on the Secretary of State's online voter registration portal for its voter registration work outside of jails.

32.    Particularly if S.B. 436 requires more than attestation under penalty of perjury of citizenship, VOTE anticipates that it will not be able to conduct voter registration inside jails—a core part of its mission—when applicants are required to provide proof of citizenship. Registrants in jails do not have documents proving citizenship with them, and VOTE would not be able to facilitate retrieval of these documents to submit completed voter registration applications on behalf of applicants because it has limited staff and is limited by what staff are allowed to bring inside the jails.

33.    VOTE regularly conducts voter registration drives throughout its chapter communities. These drives occur at locations such as workplaces, college campuses, and community events. VOTE also registers individuals who visit its offices and residents of canvassed neighborhoods.

34.    VOTE's work outside of jails would be severely hindered if S.B. 436 requires more than attestation under penalty of perjury that an applicant is a U.S. citizen. VOTE anticipates that it will likely need to purchase printers and scanners to make copies of any required documentary proof of citizenship at voter registration events to comply with S.B. 436. However, it anticipates that these resources will be minimally effective in facilitating voter registration as it is unlikely that prospective registrants will have proof of citizenship on their person at registration events. Because prospective voters who do not have proof of citizenship with them cannot fully participate, this will prevent VOTE from completing voter registrations on-site. VOTE's inability

10

to collect and submit completed voter registration applications at its registration events frustrates its mission.

35.    Based on its experience registering voters, VOTE is deeply concerned that prospective voter registration applicants will be distrustful of any attempt by staff and volunteers to copy, collect, or inquire into sensitive personal information. VOTE seeks to maintain its position as a trusted community partner and is worried that collecting proof of citizenship to register voters will open the organization up to security and liability concerns, as well as reputational harm. VOTE also expects that many of these community members will be concerned about the security of providing sensitive personal information and documentation over the internet such that they may choose not to register. VOTE's inability to collect and submit completed voter registration applications at its registration events frustrates its mission.

36.    Moreover, even if VOTE could continue any of its voter registration activities, because S.B. 436 does not define what constitutes proof of citizenship and does not explain how it must be submitted, VOTE is prevented from planning for future voter registration events and is concerned that it will be unable to register voters altogether ahead of upcoming elections. VOTE needs to plan for voter registration activities well in advance—including allocating funds or other necessary resources, organizing and training staff and volunteers, and purchasing or otherwise procuring voter registration equipment—and it is unable to make these key decisions when it does not know when Louisiana will implement or enforce S.B. 436.

37.    VOTE's membership comprises formerly and currently incarcerated people, family members, and community members. VOTE's membership includes individuals who are currently ineligible to vote but will become eligible and will need to provide proof of citizenship to comply with S.B. 436. VOTE engages its membership through direct organizing, voter education,

registration drives, and know-your-rights workshops, and is considered a leader in criminal justice and voting rights reform both nationally and in Louisiana.

38.     VOTE anticipates that its members, including those who are ineligible but will become eligible to vote and its members who are currently registered but anticipate moving or otherwise updating their registration, will have significant difficulty providing any required documentary proof of citizenship with their voter registration application, if they are able to do so at all.

39.     Upon information and belief, VOTE has members who register to vote or update their registration at public assistance agencies. VOTE anticipates that these members would not be able to register to vote, or would face increased burdens in doing so, if they were required to provide some form of documentary proof of citizenship during their interaction with the relevant office.

40.     Plaintiff **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE LOUISIANA STATE CONFERENCE** is a state affiliate of the National Association for the Advancement of Colored People, Inc. The Louisiana NAACP is the oldest and one of the most significant civil rights organizations in Louisiana, and it works to ensure the political, educational, social, and economic equality of African Americans and all other Americans.

41.     The Louisiana NAACP is a non-profit, non-partisan organization with 20 branches and 40 smaller units throughout the state. The Louisiana NAACP has thousands of members, a large portion of whom are Black people and other people of color.

42.     Two central goals of the Louisiana NAACP are to eliminate barriers to the democratic process and to enforce federal laws and constitutional provisions securing voting rights.

43.     The Louisiana NAACP considers its civic engagement and voter education services to be a core part of its organizational goals of encouraging everyone, especially people of color, to vote and participate in the democratic process.

44.     Toward those ends, the Louisiana NAACP regularly works to register and educate Black voters and encourages African Americans to engage in the political process by registering to vote and turning out to vote during election seasons. The organization, through its local branches and units, hosts voter registration opportunities year-round.

45.     The Louisiana NAACP conducts in-person and virtual town hall meetings to educate Black voters and other voters about the importance of voting and likewise publishes educational information about voting on its website and social media channels.

46.     To engage young and future voters, Louisiana NAACP's Youth and College Division hosts or participates in voter outreach and education events on college campuses where they encourage and assist students to register to vote.

47.     Their voter registration work has become more challenging with recent changes to state law, including the enactment of S.B. 436. The burdens of S.B. 436 frustrate the mission of the Louisiana NAACP, introducing confusion and uncertainty to their work to educate and register voters.

48.     As a result of S.B. 436, the Louisiana NAACP will need to expend time and resources beyond what it previously devoted to voter registration to understand what materials are necessary to register to vote, and to provide its local branches and members with guidance on the subject. As a volunteer-based organization, Louisiana NAACP also will need to devote time and resources to ensure that its volunteers receive adequate training, beyond the training previously provided on voter registration, on how to register voters given S.B. 436's requirements.

49.    The burdens caused by S.B. 436 also mean that, to continue its current mission, Louisiana NAACP will be required to divert significant resources to assist and educate voters about how to obtain necessary documentation to register to vote. To maintain its longstanding commitment to voter registration, Louisiana NAACP will have to provide new services to members and the public to help voters navigate the complex procedures to obtain proof of citizenship.

50.    The Louisiana NAACP expects that it will need to buy additional equipment and provide training on how to use the new equipment for its thousands of members and volunteers to ensure that voter registration efforts comply with S.B. 436. The cost of buying new equipment and providing requisite training would interrupt planned programming and divert resources away from other programs.

51.    In response to S.B. 436, the Louisiana NAACP has had to engage with partner organizations and peers to try to understand how to continue their normal voter registration activities while complying with the law. Despite their efforts, and due to the lack of clarity from the state, the Louisiana NAACP has not been able to adequately educate or reassure their voters regarding the documents necessary to register to vote. The lack of information around the implementation of the law has worried and confused members, leaving them concerned they will not be able to properly register voters.

52.    Due to recent changes in state law, the Louisiana NAACP has pivoted to using online voter registration when registering voters in the community. Their ability to register voters at community events would be hindered by the necessity of documentation that most voters do not typically carry on their person, frustrating the Louisiana NAACP's ability to reach their voter registration goals.

53.     Additionally, most proof of citizenship documents contain sensitive information that most voters will be uncomfortable sharing with volunteers at public events, especially if copies will need to be made or uploaded.

54.     Any proof of citizenship requirement will hinder the Louisiana NAACP's Youth and College Division's ability to register students on college campuses as students may not bring such documentation with them to their college or university.

55.     Louisiana NAACP members who are currently registered to vote but need to update their registration due to a change of address, party affiliation, or name will face additional burdens under S.B. 436's proof of citizenship requirements. Even though they have been registered and have voted for years, these members will be forced to provide proof of citizenship before they are allowed to update their voter registration.

56.     Upon information and belief, many Louisiana NAACP members do not possess a United States Passport and do not intend to purchase one. The cost of a passport is more than some members are able to afford.

57.     The Louisiana NAACP anticipates that many of its members, and those they serve, will have difficulty obtaining and paying for proof of citizenship to register or update their voter registration. Specifically, it expects that many of its members and constituents will have lost birth certificates, were never in possession of such documentation, or otherwise would not be able to obtain such documentation in order to register.

58.     Upon information and belief, the Louisiana NAACP has members who register to vote or update their registration at public assistance agencies. The Louisiana NAACP anticipates that these members would not be able to register to vote, or would face increased burdens in doing

so, if they were required to provide some form of proof of citizenship during their interaction with the relevant office.

59.    Plaintiff **POWER COALITION FOR EQUITY AND JUSTICE** is a non-partisan coalition of community-based organizations. Headquartered in New Orleans, Louisiana, Power Coalition educates and empowers voters across the state.

60.    Power Coalition advances its mission with the support of a small staff, community volunteers, and a membership of nonprofit and advocacy organizations. Collectively, Power Coalition's network unites around an integrated civic engagement strategy to amplify the voices of those who have been historically marginalized, with a focus on Black Louisianans and communities of color, as well as young, first-time voters on college campuses.

61.    Power Coalition's work includes outreach to voters impacted by the criminal legal system in Louisiana, working with partners, including VOTE and the Louisiana NAACP, to provide voter education and engagement to eligible individuals with prior felony convictions, most of whom are Black Louisianans.

62.    Voter registration is a core part of Power Coalition's mission. Power Coalition conducts voter registration drives at college campuses (particularly at historically Black colleges and universities), churches, festivals, and other community events to which they are invited. Target populations of Power Coalition's voter registration drives include students, young voters, and voters of color.

63.    Power Coalition conducts voter registration drives using the Secretary of State's online registration portal. Power Coalition has purchased approximately 50 tablets for this purpose.

64.    Power Coalition conducts voter registration drives year-round, with a particular focus on the election season. In 2024, Power Coalition facilitated tens of thousands of registrations through their own events and participation in events organized by other non-profit organizations.

65.    Particularly if S.B. 436 requires more than attestation under penalty of perjury of citizenship, Power Coalition will need to upend its voter registration activities to comply with S.B. 436's proof of citizenship requirement. Power Coalition anticipates that it will likely need to purchase printers and scanners to make copies of any required documentary proof of citizenship at voter registration events to comply with S.B. 436. However, it anticipates that these resources will be minimally effective in facilitating voter registration as it is unlikely that prospective registrants will have proof of citizenship on their person at registration events. Because prospective voters who do not have proof of citizenship with them cannot fully participate, this will prevent Power Coalition from completing voter registrations on-site. Power Coalition's inability to collect and submit completed voter registration applications at its registration events frustrates its mission.

66.    Moreover, assuming Power Coalition could continue any of its voter registration activities, S.B. 436 does not define what constitutes proof of citizenship and does not explain how it must be submitted, including whether the proof of citizenship provision applies to online voter registration. Power Coalition is therefore unable to plan future voter registration events and is concerned that it will be unable to register voters ahead of upcoming elections. Power Coalition needs to plan voter registration activities well in advance—including allocating funds or other necessary resources, organizing and training staff and volunteers, and purchasing or otherwise procuring voter registration equipment—and it is unable to make these key decisions when it does not know when Louisiana will implement or enforce S.B. 436.

67.    Based on its experience registering voters, Power Coalition is also deeply concerned that prospective voter registration applicants will be distrustful of any attempt by Power Coalition to copy, collect, or inquire into sensitive personal information. Power Coalition seeks to maintain its position as a trusted community partner and is worried that collecting proof of citizenship to register voters will open the organization up to security and liability concerns, as well as reputational harm. Power Coalition also expects that many of these community members will be concerned about the security of providing sensitive personal information and documentation over the internet such that they may choose not to register. These concerns from community members and Power Coalition's need to maintain its reputation as a trusted partner in the voting and elections space will inhibit the Power Coalition's ability to conduct voter registration activities.

68.    Upon information and belief, many of the prospective voters that Power Coalition assists in its voter registration activities are individuals who interact with public assistance agencies, including low-income and low-information voters. PCEJ anticipates that it will be likely that if these offices require some form of documentary proof of citizenship before registering eligible applicants to vote, many applicants will be unable to provide such proof at the time of their interaction with the agency, and this will increase the number of prospective voters that PCEJ must assist and increase the time and effort required to assist them in registering, if PCEJ staff and volunteers are able to do so at all.

69.    If S.B. 436 requires more than attestation under penalty of perjury of citizenship, Power Coalition expects that many of the community members that it seeks to register to vote will face onerous, often insurmountable barriers to obtaining and providing proof of citizenship.

Specifically, it expects that many community members will not be able to afford the costs required to obtain common forms of any required documentary proof of citizenship.

70.    To continue serving its core mission, Power Coalition will need to divert significant resources from its other activities related to that mission to educate and assist its constituents and other community members with registering to vote under S.B. 436's new proof of citizenship requirement. Power Coalition provides voter education to hundreds of thousands of Louisiana voters and eligible individuals across the state. The proof of citizenship requirement will require Power Coalition to devote significant resources to providing additional education and assistance about complying with the requirement that it would not otherwise have to do to carry on its longstanding programming.

71.    Power Coalition anticipates needing to undertake a full-scale education campaign with print and digital materials, which will require staff time to create, fact-check, print, and distribute materials, as well as time and resources to host educational presentations and webinars. This focus on assisting voters in complying with proof of citizenship requirements will take Power Coalition staff time and resources away from activities like voter registration and preparing for and testifying during the Louisiana legislative session.

72.    Power Coalition will also need to completely overhaul its training for voter registration staff and volunteers, including by creating brand-new materials, and require all volunteers and staff who wish to register voters to be trained again to ensure that every one of the Power Coalition's registration agents can comply with S.B. 436's proof of citizenship requirement.

73.    Power Coalition also directly assists voters who have questions about registering to vote or casting their ballot. Power Coalition anticipates that eligible voters will require significant assistance understanding proof of citizenship requirements and anticipates that, to maintain its

longstanding level of service and fulfill its historical mission, its staff will expend significant resources to assist those individuals in understanding the registration process and to provide proof of citizenship.

**Defendants**

74.     Defendant **NANCY LANDRY** is the Secretary of State of Louisiana and is sued in her official capacity. As Louisiana's chief election officer, Secretary Landry is tasked with enforcing state and federal election laws in Louisiana, including the National Voter Registration Act. La. Stat. Ann. § 18:18; 52 U.S.C. § 20509.

75.     Defendant **DAVID N. MATLOCK** is the Secretary of the Louisiana Department of Children & Family Services (DCFS) and is sued in his official capacity. The DCFS administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to Supplemental Nutrition Assistance Program (SNAP), the Kinship Care Subsidy Program (KCSP), and the Family Independence Assistance Program (FITAP). 52 U.S.C. § 20506.[2]

76.     Defendant **MICHAEL HARRINGTON** is the Secretary of the Louisiana Department of Health (DOH) and is sued in his official capacity. The DOH administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to the Medicaid Program and the Women, Infants, and Children Program (WIC), as well as manages the Office of Behavioral Health (OBH), the Office for Citizens with Developmental Disabilities (OCDD), the Louisiana Commission for the Deaf (LCD), and the Office of Aging and Adult Services (OAAS). 52 U.S.C. § 20506.[3]

---

[2] *See also Implementing The National Voter Registration Act of 1993 for Mandatory Voter Registration Agencies that Provide Public Assistance or Provide State-Funded Programs Primarily Engaged in Providing Services to Persons with Disabilities* at 3, (hereinafter, *SOS NVRA Implementation Guide*), La. Sec'y of State (June 2019), https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/NVRAImplementationManual.pdf.
[3] *See also SOS NVRA Implementation Guide* at 3.

77.     Defendant **DR. CADE BRUMLEY** is the Superintendent of Education of the Louisiana Department of Education and is sued in his official capacity. The Department of Education administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to the Child Care Assistance Program (CCAP). 52 U.S.C. § 20506.[4]

78.     Defendant **SUSANA SCHOWEN** is the Secretary of the Louisiana Workforce Commission and is sued in her official capacity. The Workforce Commission administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to Rehabilitation Services. 52 U.S.C. § 20506.[5]

79.     Defendant **MISTI S. CORDELL** is the Chairwoman of the Louisiana Board of Regents and is sued in her official capacity. The Board of Regents administers public assistance programs subject to the requirements of Section 7 of the NVRA, including but not limited to Disability Service offices at colleges and universities. 52 U.S.C. § 20506.[6]

## FACTUAL ALLEGATIONS

**A. The NVRA Requires Simplified Voter Registration Processes and Provides the Backdrop for Louisiana's Voter Registration Procedures.**

80.     In response to cratering voter turnout, Congress passed the NVRA, 52 U.S.C. § 20501 *et seq.*, to simplify voter registration and ensure that eligible citizens may get and stay on voter rolls without unnecessary burdens. Congress intended that the NVRA would make registering to vote for federal elections straightforward and require no more than necessary from applicants to demonstrate their eligibility.

---

[4] *See also SOS NVRA Implementation Guide* at 3.
[5] *See also SOS NVRA Implementation Guide* at 3.
[6] *See also SOS NVRA Implementation Guide* at 3.

81.    Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a).

82.    As such, the NVRA "requires States to provide simplified systems for registering to vote in federal elections." *Young v. Fordice*, 520 U.S. 273, 275 (1997) (emphasis omitted). The NVRA's purpose is to "increase the number of eligible citizens who register to vote in elections" and "enhance[] the participation of eligible citizens as voters," while "protect[ing] the integrity of the electoral process." 52 U.S.C. § 20501(b).

83.    To achieve its goal of streamlining voter registration, the NVRA directs the U.S. Election Assistance Commission (EAC) to create a "mail voter registration application form for elections for Federal office," 52 U.S.C. § 20508(a)(2). This application is commonly known as the "National Mail Voter Registration Form" or the "Federal Form."

84.    Importantly, Congress specified that the Federal Form "may require *only* such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), *as is necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1) (emphasis added).

85.    The Federal Form must also include a statement that "specifies each eligibility requirement (*including citizenship*)," "contains an attestation that the applicant meets each such requirement," and "requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20508(b)(2) (emphasis added).

86.    Congress also required that states "*ensure* that any eligible applicant is registered to vote in an election" upon the timely submission of a valid voter registration application. 52 U.S.C. § 20507(a)(1) (emphasis added).

87.    States must "accept and use" the Federal Form to register voters for federal office. 52 U.S.C. § 20505(a)(1). To avoid administering a complex, bifurcated registration and elections process, most states, including Louisiana, also accept and use the Federal Form to register voters for state elections.

88.    While states are permitted to develop their own mail voter registration forms in addition to using the Federal Form, state forms used for federal election registration must track the Federal Form, including that they may only require information that is "necessary" to enable the election official to assess applicant eligibility. 52 U.S.C. §§ 20508(a)(2), (b); *see also Mi Familia Vota v. Fontes* ("*Mi Familia Vota I*"), 719 F. Supp. 3d 929, 996 (D. Ariz. 2024) (citing *Arizona v. Inter Tribal Council of Arizona* ("*ITCA*"), 570 U.S. 1, 12 (2013)).

89.    In passing the NVRA, Congress debated, voted on, and ultimately rejected proposals to allow states to require documentary proof of citizenship in connection with the Federal Form. *See* S. Rep. No. 103-6 (1993); 139 Cong. Rec. 5098 (1993); H.R. Rep. No. 103-66, at 23 (1993) (Conf. Rep.); 139 Cong. Rec. 9231-32 (1993). The Conference Committee Report concluded that requiring documentary proof of citizenship in connection with the Federal Form was "not necessary or consistent with the purposes of this Act" and "could be interpreted by States to permit registration requirements that could effectively eliminate, or seriously interfere with, the [Act's] mail registration program." Conf. Rep. at 23-24 (1993).

90.    Despite multiple requests, the EAC has never concluded that documentary proof of citizenship is "necessary" and therefore has consistently rejected requests to add that requirement

to the Federal Form. *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014) (EAC rejected requests from Arizona and Kansas to include documentary proof of citizenship requirement on state-specific Federal Form instructions); *see also* 78 Fed. Reg. 77666 (Dec. 24, 2013) (Notice for Public Comment) (describing EAC's history of rejecting documentary proof of citizenship requirements for state-specific instructions).

91.    Likewise, no state has ever successfully established that documentary proof of citizenship is "necessary" to justify requiring it on either the Federal Form or an NVRA-compliant State Form. *See, e.g.*, *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Mi Familia Vota v. Fontes* ("*Mi Familia Vota II*"), 129 F.4th 691, 719-20 (9th Cir. 2025); 52 U.S.C. §§ 20505(a)(2), 20508(b)(2)(A)-(B).

92.    To advance Congress's goal of increasing voter registration rates, the NVRA mandates state motor vehicle offices and public assistance agencies facilitate registration.

93.    State driver's license applications must also serve as voter registration applications for federal elections, and the voter registration application "may require only the minimum amount of information necessary to" allow state officials to assess the applicant's eligibility. 52 U.S.C. § 20504(c)(2)(B).

94.    Moreover, states must designate all offices that provide public assistance and all offices that provide state-funded programs "primarily engaged in providing services to persons with disabilities" as voter registration agencies. 52 U.S.C. § 20506(a); *see also* 52 U.S.C. § 20506(a)(3) ("other offices" designation). These designated voter registration agencies must use the Federal Form or its "equivalent." 52 U.S.C. § 20506(a)(6).

95. Finally, the NVRA requires that "[a]ny State program or activity" to maintain the voter registration roll for federal elections "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

**B. Louisiana had Already Established a Voter Registration Process Without Requiring Proof of Citizenship.**

96. Louisiana is subject to the requirements of the NVRA. *See* 52 U.S.C. § 20503 (exempting only states that have no voter registration requirement for any voter for any federal election and states that permit same day voter registration at the polling place for federal general elections, neither of which apply to Louisiana).

97. As permitted by the NVRA, Louisiana has developed a state voter registration form ("State Form") that applicants may use to register to vote in addition to the Federal Form. 52 U.S.C. §§ 20508(a)(2), (b); La. Stat. Ann. § 18:104 (establishing framework for Louisiana state voter registration form).

98. Louisiana residents who are U.S. citizens, are at least 18 years old (or will turn 18 before the next election), and are not disenfranchised, *see* La. Stat. Ann. § 18:102, are eligible to register to vote in local, state, and federal elections. La. Stat. Ann. § 18:101.

99. Louisiana voters may register for all elections—local, state, and federal—using either the Federal Form or the State Form. *See* La. Stat. Ann. § 18:115 ("A person may apply to register to vote by mail by completing, signing through handwritten signature, and returning either the national voter registration form or the state mail voter registration form to the registrar of voters for the parish in which the applicant resides.").

100. Both forms require the applicant to attest, under penalty of perjury, that they are a United States citizen. La. Stat. Ann. § 18:104(C) (requiring attestation of U.S. citizenship on the

State Form); 52 U.S.C. § 20508(b)(2) (requiring attestation of U.S. citizenship on the Federal Form).[7]

101.    First time registrants, as well as those who have moved, changed their party affiliation or non-affiliation, *see* La. Stat. Ann. § 18:107, changed their name, *see* La. Stat. Ann. § 18:111, become eligible to vote after a prior felony conviction, *see* La. Stat. Ann. § 18:102, or modified their registration for any other lawful reason, must complete a voter registration application.[8]

102.    Louisiana voters may also register to vote online using a Louisiana Driver's License or special I.D. card issued by the Office of Motor Vehicles (OMV). La. Stat. Ann. § 18:115.1.

103.    Louisiana voters may also complete an online application using a social security number or other specified form of identification, print the form, and submit it by mail to their parish registrar of voters.[9]

104.    Louisiana voters may also register to vote in person at a parish registrar of voters office, La. Stat. Ann. § 18:115, the OMV, La. Stat. Ann. § 18:114, or at any one of several NVRA-mandated public assistance agencies, *see* La. Stat. Ann. § 18:116.

105.    The public assistance offices in Louisiana that are required under the NVRA to provide voter registration services are SNAP, KCSP, CCAP, FITAP, Medicaid Program, and WIC. La. Stat. Ann. § 18:116. The Disability Offices that are required to provide voter registration

---

[7] *See also* Louisiana Voter Registration Application, La. Sec'y of State (revised June 2019), https://perma.cc/KE6T-B5ZX (State Form requiring affirmation of U.S. citizenship and signature under penalty of perjury); National Mail Voter Registration Form, EAC, https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf (Federal Form requiring affirmation of U.S. citizenship and signature under penalty of perjury).
[8]    *See also Frequently Asked Questions*, La. Sec'y of State, https://www.sos.la.gov/ElectionsAndVoting/RegisterToVote/FrequentlyAskedQuestions/Pages/default.aspx?OwnershipName=RegisterToVote&faqid=0 (last visited May 7, 2025) (explaining that voters who move to a new parish or change their name or political party must re-register to vote).
[9]    *Online Voter Registration*, La. Sec'y of State, https://www.sos.la.gov/ElectionsAndVoting/Pages/OnlineVoterRegistration.aspx (last visited May 7, 2025).

services under the NVRA are the OBH, OCDD, LCD, OAAS, Rehabilitation Services, and Disability Services offices at colleges and universities.[10]

106.    The mail voter registration deadline for any election is 30 days prior to the election, and the deadline to register to vote online is 20 days prior to the election. La. Stat. Ann. § 18:135.

## C. Louisiana Imposed a Proof of Citizenship Requirement on the State Voter Registration Form in Senate Bill 436 (S.B. 436).

107.    On April 2, 2024, Senator Michael Fesi introduced S.B. 436 in the Louisiana Senate. S.B. 436 amends Section 104 of the Louisiana Election Code, which sets out the parameters for the state voter registration form, to include the statement: "Each applicant shall include with his application proof of United States citizenship." La. Stat. Ann. § 18:104(D)(2).

108.    S.B. 436 did not explicitly amend other portions of the Louisiana Election Code related to voter registration, including provisions pertaining to online voter registration. *See* La. Stat. Ann. § 18:115.1.

109.    S.B. 436 was one of 11 bills in an "election integrity legislative package" announced by the Louisiana Department of State in March 2024. The package of bills was purportedly intended to "further boost [the] state's election integrity policies and procedures."[11]

110.    S.B. 436 was amended once in each chamber before its passage.

111.    The Senate amendment added an effective date of January 1, 2025.

112.    The House amended the language of the original bill that initially gave the Secretary of State authority to prescribe a State Form that "shall contain spaces for at least the following

---

[10] *See SOS NVRA Implementation Guide* at 3.
[11] *Secretary of State Nancy Landry Announces 2024 Election Integrity Legislative Package and Press Availability*, La. Sec'y of State (Mar. 7, 2024), https://www.sos.la.gov/OurOffice/PublishedDocuments/030624LegislativePackagePressRelease_final.pdf.

required information to be provided by the applicant for the registrar of voters to assess eligibility: (6) Proof of American citizenship."

113.    The House amendment changed this language to the language that was ultimately included in the enacted legislation: "Each applicant shall include with his application proof of United States citizenship."

114.    S.B. 436 was considered at a hearing in the Committee on Senate and Governmental Affairs ("Senate Hearing") in April 2024.

115.    Senator Fesi testified in support of S.B. 436 as the bill's sponsor at the Senate Hearing. Senator Fesi characterized S.B. 436 as intended to "keep our voting integrity in place" and as a statutory codification of the state constitutional amendment passed by Louisiana voters in 2022 allowing voting only by U.S. citizens.[12]

116.    When asked by Committee Chair Cleo Fields for instances in Louisiana where non-citizens have actually registered or voted, Senator Fesi responded, "[We] don't know whether they have or not."[13] Senator Fesi also later said, "[t]he problem may not be great now, but we're just going to prepare for it."[14]

117.    Secretary Landry also testified in support of S.B. 436 during the Senate Hearing. When asked how many non-citizens are voting in Louisiana, Secretary Landry answered, "I don't think we know."[15] Secretary Landry also added: "Right now, we are relying on people attesting to the fact that they are a non-citizen. And we would like to put more teeth into the constitutional amendment than relying on an attestation."[16]

---

[12] Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Sen. Mike Fesi, at 1:34:50 (Apr. 17, 2024) https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.
[13] *Id.* at 1:36:20.
[14] *Id.* at 1:52:40.
[15] Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Sec. Landry, at 1:49:10 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.
[16] *Id.*

118.    During the Senate Hearing, committee members asked Senator Fesi and Secretary Landry what proof of citizenship would be acceptable under the bill. Initially, Secretary Landry said, "there are certificates of citizenship that you can get, and there's plenty of proof of citizenship. Lots of jobs require you to prove citizenship before you can take the job. And so there are ways to prove citizenship."[17] She added—and similarly repeated several times—that the bill "would give my office broad authority to give effect to [the bill]. And we're currently researching best practices and the best way to go about doing that that wouldn't be too burdensome."[18]

119.    During the Senate Hearing, multiple committee members expressed concern that the bill did not describe acceptable forms of proof of citizenship and asked for examples.

120.    Secretary Landry repeated that her office was studying what other states were doing and the purpose of the amendment delaying the bill's effective date until January 1, 2025, was to give her office time to issue relevant guidance.[19]

121.    Several members of the public also testified during the Senate Hearing.

122.    Two witnesses testified against S.B. 436. Bruce Reilly, Deputy Director of VOTE (a Plaintiff in this matter), pointed to past problems with the Secretary of State's office implementing voting procedures and emphasized the need for S.B. 436 to be more specific.[20]

123.    Mr. Reilly also warned that S.B. 436 could create a "massive burden" on those registering to vote and argued that the Legislature shouldn't be spending this much time on hypotheticals.[21]

---

[17] *Id.* at 1:38:25.

[18] *Id.* at 1:39:11.

[19] *See generally* Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Sec. Landry, at 1:34:25–2:15:22 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.

[20] Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Bruce Reilly, at 2:09:40 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.

[21] *Id.*

124.    Colleen Kissel, an individual voter, also testified against the bill.[22] Ms. Kissel's testimony emphasized the unnecessary burdens the bill could impose, including on young people and those born out of state who could be required to obtain a birth certificate before the registration deadline.[23]

125.    While two people testified in support of S.B. 436, neither provided any corroboration for their allegations of non-citizen voting.[24]

126.    After the Senate passed S.B. 436 by a vote of 28-10 on April 23, 2025, the Committee on House and Governmental Affairs considered the bill at a hearing ("House Hearing") in May 2024.

127.    When asked what would constitute valid proof of citizenship under S.B. 436, Senator Fesi provided no more specificity than he had previously, responding: "The Secretary [of State] has certain regulations put up, and mainly it's a birth certificate, driver's license, whatever—they have a couple of items of identification to prove that they're a citizen of the United States. . . . And this bill does not say that you have to have a passport."[25]

128.    Mr. Reilly again testified against S.B. 436 during the House Hearing. He emphasized the problematic "mechanics" of S.B. 436 and argued that S.B. 436 would create "complications" and leave people in "limbo."[26]

---

[22] Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Colleen Kissel, at 2:13:00 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.
[23] *Id.*
[24] Hearing of La. Senate Comm. on Senate & Gov't Affairs, Statement by Chris Alexander & Bert Callais, at 1:58:00 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.
[25] Hearing of La. House Comm. on House & Gov't Affairs, Statement by Sen. Fesi, at 5:50 (May 8, 2024), https://house.louisiana.gov/h_video/VideoArchivePlayer?v=house/2024/may/0508_24_HG.
[26] Hearing of La. House Comm. on House & Gov't Affairs, Statement by Bruce Reily, at 6:50(May 8, 2024), https://house.louisiana.gov/h_video/VideoArchivePlayer?v=house/2024/may/0508_24_HG.

129.    Mr. Reilly also questioned how people would upload proof of citizenship to the state's online voter registration portal and whether there was any recourse for those who had lost documents in natural disasters.[27]

130.    The House passed the amended version of S.B. 436 on May 22, 2024, and the Senate passed it again on May 28, 2024. Governor Jeff Landry signed it into law on June 11, 2024.

131.    S.B. 436 became effective on January 1, 2025.

**D.  Plaintiffs' Gave Louisiana Notice That S.B. 436 Violates the NVRA.**

132.    On January 28, 2025, Plaintiffs LWVLA, VOTE, Louisiana NAACP, and PCEJ sent Defendants a pre-suit NVRA notice letter pursuant to 52 U.S.C. § 20501(b). That letter was delivered to all Defendants electronically and is attached to this Complaint as Exhibit A. Certified Mail Receipts of delivery, which provided a second form of notice to some Defendants, are attached to this Complaint as Exhibit B.

133.    Plaintiffs' letter warned Secretary Landry that enforcement of S.B. 436's proof of citizenship provision would place her in violation of Sections 5, 6, 7, 8, and 9 of the NVRA.

134.    To date, Defendants have not responded to Plaintiffs' notice letter in any form, providing no evidence or assurance that they have implemented or will implement remedial action or guidance regarding the implementation of S.B. 436. As Plaintiffs received no notice that the violation has been corrected within 90 days of delivery of their notice letter, they undertake the instant action.

**E.  Louisiana's Implementation of S.B. 436 Has Been Haphazard.**

135.    S.B. 436 is vague and ambiguous. Among other things, the law does not define or otherwise explain (a) what "proof of United States citizenship" would satisfy the law, (b) how the

---

[27] *Id.*

proof of citizenship must be submitted (e.g., whether copies are acceptable, whether proof may be submitted by email, mail, or in-person), (c) whether the proof of citizenship requirement applies to all methods of registration, including online registration, (d) whether proof of citizenship must be submitted concurrently with a voter registration application or whether it may be submitted later, or (e) the consequences of submitting an application without proof of citizenship (i.e., whether the application is rejected or whether there is notice and opportunity to cure).

136.    Upon information and belief, since S.B. 436 went into effect on January 1, 2025, neither Secretary Landry nor any other state actor has issued any guidance regarding the implementation of the proof of citizenship requirement to rectify the vagueness or resolve the ambiguity.

137.    Upon information and belief, parish registrars have requested guidance from the Secretary of State regarding the implementation of S.B. 436 but have received none.

138.    For example, in September 2024, the Secretary of State's Office unhelpfully informed the East Baton Rouge Parish Registrar of Voters that while "[t]he legislation provides for this authority beginning January 1," the Secretary of State "will implement it when there are policies and procedures in place that have been communicated to all parties (after input from stakeholders)." Ex. C at 1.[28]

139.    Upon information and belief, no such policies or procedures have been implemented or communicated to parish registrars or the public. Nor has the Secretary of State

---

[28] From February to March 2025, counsel for Plaintiffs submitted records requests to the Louisiana Secretary of State and registrars for Jefferson Parish, Orleans Parish, Caddo Parish, and East Baton Rouge Parish, seeking information and guidance regarding the implementation of S.B. 436's proof of citizenship requirement. Exhibit C is a product of these records requests.

publicly released any proposed guidance or solicited public input regarding the implementation and impact of S.B. 436.

140.    Plaintiffs, including LWVLA, have requested information from parish registrars regarding S.B. 436's proof of citizenship requirement and were told that the registrars did not have information on implementation to provide.

141.    To date, neither Secretary Landry nor any other state official has said what constitutes proof of citizenship, why it is necessary, or whether the requirement that all voter registration applicants attest to their citizenship status under penalty of perjury is insufficient to protect the state's interests.

**F. Louisiana's Existing Policies and Procedures Adequately Prevent Non-Citizen Voting.**

142.    Louisiana's existing laws and procedures—which do not include a proof of citizenship requirement—effectively prevent non-citizens from voting in Louisiana elections.

143.    In response to reporter questions during the signing of Governor Landry's Executive Order No. JML 24-136, "Citizenship Disclaimer for Voter Registration Agencies to Protect Election Integrity," in August 2024, Secretary Landry stated that 48 alleged non-citizens had been removed from the Louisiana voter rolls since 2022, or .0016% of the 2,979,799 registered voters in Louisiana as of May 1, 2025.[29] Secretary Landry added that Louisiana's existing policies and procedures—prior to the effective date of S.B. 436—were "effective at identifying and removing non-citizens" from the voter rolls.[30]

---

[29] *Statewide Report of Registered Voters*, La. Sec'y of State,
https://www.sos.la.gov/ElectionsAndVoting/Pages/RegistrationStatisticsStatewide.aspx (last visited May 7, 2025).
[30] WBRZ, *WATCH: Landry signs executive order to protect election integrity*, at 14:46, YouTube (Aug. 26, 2024),
https://www.youtube.com/live/cTiCiiYWk0g?t=886s.

144.    During the Senate Hearing on S.B. 436, Secretary Landry confirmed that the state does not have any evidence suggesting that non-citizens actually vote in Louisiana elections, yet still insinuated without any evidence that non-citizens *may be* voting.

145.    Senator Fesi, the sponsor of S.B. 436, similarly did not point to any evidence that non-citizen registration or voting is a significant problem in Louisiana. *See supra* ¶ 116.

146.    Secretary Landry stated that—despite the lack of evidence about non-citizen voting in Louisiana—S.B. 436's proof of citizenship requirement was intended to put "more teeth" into Louisiana's constitutional amendment enshrining the state's ban on non-citizen voting. *Supra* ¶ 117. She did not say, however, why "more teeth" were necessary.

### G. The Proof of Citizenship Requirement Will Unduly Burden the Ability of Louisianans, Including Members of Plaintiff Organizations, to Register to Vote.

147.    Many eligible voters in Louisiana, including members of Plaintiff organizations, do not possess documentary proof of citizenship or do not have readily available access to it. These citizens would face significant financial and practical burdens to both obtaining any required documentary proof of citizenship and submitting it with their voter registration application.

148.    Because Louisiana voters may use the State Form to update their voter registration,[31] S.B. 436's proof of citizenship requirement will affect many voters who are already registered, not just those who are registering to vote for the first time.

149.    Under the plain language of the law, voters who may have been duly registered for decades will be required to provide proof of citizenship when they move to a new parish, change

---

[31] *See* Louisiana Voter Registration Application, La. Sec'y of State (revised June 2019), https://perma.cc/KE6T-B5ZX; La. Stat. Ann. § 18:135(C).

their party affiliation,[32] or change their name or other identifying information and must submit a new application under Louisiana law. *See* La. Stat. Ann. § 18:108.

      **a. United States Citizens in Louisiana, Including Members of Plaintiff Organizations, Often Do Not Possess Documentary Proof of Citizenship.**

150.    Because of the vague language of the law and the lack of guidance from state officials, it remains unclear what form of proof of citizenship will satisfy S.B. 436's requirements.

151.    However, a substantial number of citizens in Louisiana who are eligible to vote, including members of Plaintiff organizations and those they seek to register, lack common forms of documentary evidence of citizenship that would likely be required under S.B. 436.

152.    According to recent estimates, more than 9% of U.S. citizens lack ready access to citizenship documents.[33] These estimates indicate that hundreds of thousands of eligible Louisiana voters lack proof of citizenship.[34]

153.    While approximately 50% of Americans have current U.S. passports,[35] as of 2024, only 30.4% of Louisianans did. This means 69.6% of Louisianans (amounting to 3,091,037 people) do not have a valid U.S. passport.[36]

154.    Louisianans who at one point possessed proof of citizenship may have misplaced or lost that documentation, including in natural disasters such as Hurricanes Katrina, Rita, Laura, Delta, and Ida.

---

[32] Louisiana will introduce a new system of closed-party primary elections in Spring 2026, and many voters are likely to change their party affiliation leading up to those and future elections. La. Stat. Ann. § 18:410.3 (effective Jan. 1, 2026).

[33] Kevin Morris & Cora Henry, *Millions of Americans Don't Have Documents Proving Their Citizenship Readily Available*, Brennan Ctr. for Just. (June 11, 2024), https://www.brennancenter.org/our-work/analysis-opinion/millions-americans-dont-have-documents-proving-their-citizenship-readily.

[34] The U.S. Census Bureau estimates Louisiana's total population is 4,597,740 as of July 1, 2024. *Quick Facts: Louisiana*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/LA/EDU635223.

[35] *Reports and Statistics: U.S. Passports*, U.S. Dep't of State Bureau of Consular Affairs (Oct. 9, 2024), https://travel.state.gov/content/travel/en/about-us/reports-and-statistics.html.

[36] *Passport possession, by state*, Ctr. for Am. Progress, https://www.americanprogress.org/wp-content/uploads/sites/2/2025/01/SAVEact-tables.pdf.

155.    Certain groups are especially likely to lack a passport: low-income citizens, the elderly, and Black citizens.[37] These same groups are also more likely to lack other forms of proof of citizenship, like a birth certificate.[38] These are many of the same populations that Plaintiff organizations target in their voter registration activities.

156.    Elderly people, particularly Black and Native American citizens born during the era of *de jure* segregation, are more likely to lack birth certificates because many were born outside of hospitals, and their births were not officially recorded. There are 789,502 citizens in Louisiana aged 65 or older, and 1,029,375 citizens in Louisiana identify as Black.[39] Further, according to the American Community Survey 2023 1-Year Estimates, there are 1,095,443 people in Louisiana aged 60 or older (approximately 24%), and 25.5% of Louisianans aged 60 or older are Black.[40]

157.    Low-income voters are particularly likely to lack access to documentary evidence of citizenship. For example, citizens earning less than $25,000 per year are more than twice as likely to lack access to documentary proof of citizenship than other Americans, and at least 12% of voting-age citizens who earn less than $25,000 per year do not have a readily available U.S. passport, naturalization document, or birth certificate.[41] As of 2023, 232,864 full-time, year-round workers in Louisiana earned less than $25,000 in the last year.[42]

---

[37] Robert Greenstein, Leighton Ku, & Stacy Dean, *Survey Indicates House Bill Could Deny Voting Rights to Millions of U.S. Citizens*, Ctr. on Budget and Pol'y Priorities (Sept. 22, 2006), https://www.cbpp.org/research/survey-indicates-house-bill-could-deny-voting-rights-to-millions-of-us-citizens.
[38] *Id.*
[39] *American Community Survey 2023 1-Year Estimates Detailed Tables, S2901 – Citizen, Voting-Age Population by Selected Characteristics*, U.S. Census Bureau, https://data.census.gov/table/ACSST1Y2023.S2901?t=Citizenship&g=040XX00US22.
[40] *American Community Survey 2023 1-Year Estimates Detailed Tables, S0102 - Population 60 Years and Over in the United States,* U.S. Census Bureau, https://data.census.gov/table/ACSST1Y2023.S0102?q=Louisiana.
[41] *Citizens Without Proof: A Survey of Americans' Possession of Documentary Proof of Citizenship and Photo Identification*, Brennan Ctr. for Just. (2006), https://www.brennancenter.org/sites/default/files/legacy/d/download_file_39242.pdf.
[42] *American Community Survey 2023 1-Year Estimates Detailed Tabled – S2001 Earnings in the Past 12 Months (in 2023 Inflation-Adjusted Dollars)*, U.S. Census Bureau, https://data.census.gov/table/ACSST1Y2023.S2001?q=Louisiana.

158.    Moreover, as of July 1, 2024, 18.9% of Louisianas are classified as living in poverty, 32.1% identify as any-part Black, and 17.4% are aged 65 and older.[43]

159.    Providing any required documentary proof of citizenship will also be especially burdensome for people who have changed their name from the name listed on their birth certificate, such as spouses who adopt their partner's name. In Louisiana, an estimated 966,376 female citizens aged 15 and older have names that do not match their birth certificate either due to a last name change or last name hyphenation.[44]

160.    Many LWVLA members are married women who took their spouse's last name, so the name on their birth certificates and other documents demonstrating citizenship do not match their current legal name listed on the voter roll. These LWVLA members may be forced to seek out and pay for new citizenship documents to register to vote or update their voter registration information. These members may also be required to produce their marriage or divorce certificate to secure such documentation, which will be especially burdensome for members who got married many years or even decades ago or who were married in another state.

161.    Students and young voters are also disproportionately likely to lack proof of citizenship. As described *supra* ¶¶ 12, 28, 46, 60, 62, many Plaintiffs' voter registration activities target, among other populations, students, young voters, and first-time voters. Many students are young adults who are just becoming eligible to vote and therefore must register for the first time.

162.    Students in Louisiana living on campuses often do not have easy access to their birth certificates or other underlying citizenship documentation, including students eligible to vote

---

[43] *Quick Facts: Louisiana*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/LA/EDU635223; *American Community Survey 2023 1-Year Estimates Detailed Tabled – B02009 Black or African American Alone or in Combination With One or More Other Races*, U.S. Census Bureau, https://data.census.gov/table/ACSDT1Y2023.B02009?q=Louisiana.
[44] *Female U.S. citizens without a valid birth certificate*, by state, Ctr. for Am. Progress, https://www.americanprogress.org/wp-content/uploads/sites/2/2025/01/SAVEact-tables.pdf.

in Louisiana who were born out-of-state and do not have their birth certificate or other underlying citizenship documentation with them. Students in Louisiana move frequently and have less access to documents proving their citizenship status. Many other students and young voters cannot afford to pay for passports or other forms of proof of citizenship.

163.    Young and first-time voters often similarly cannot afford and do not have access to documentary evidence of citizenship. These kinds of documents are often in the possession of the parents of young and first-time voters and may not be readily accessible for these voters.

164.    LWVLA, VOTE, and PCEJ also assist voters impacted by the criminal legal system in their voter registration efforts. Formerly incarcerated people, including members of VOTE who are not eligible to vote but will become eligible, are more likely to be people of color and low-income, and are less likely to possess documentary proof of citizenship than other Louisianans. They are also likely to lose many of their belongings, such as proof of citizenship documents, in the upheaval that accompanies arrest and incarceration, as well as lack the financial resources necessary to obtain new proof of citizenship documents.

165.    Plaintiff organizations also conduct voter registration drives in local jails. Many registrants in jails are eligible to vote but typically do not have documentary proof of citizenship with them, if they have it at all.

166.    There are also U.S. citizens who are unlikely to have any documentary proof of their citizenship status because of the process by which they became citizens. For example, there is a specific group of citizens who naturalize without *any* documentary proof of it because citizenship is bestowed upon them by law once a parent naturalizes. *See* Child Citizenship Act of

2000, 8 U.S.C. § 1431 *et seq.*[45] These citizens, who meet the qualifications to vote, would be unduly burdened if attesting to their citizenship was not sufficient and they would have to procure a document such as a passport to vote.

**b. Proof of Citizenship is Typically Expensive and Complicated to Obtain.**

167. For the many Louisianians, including members of Plaintiff organizations and the communities they serve, who do not have documentary evidence of citizenship, it can be expensive and complicated to obtain or replace proof of citizenship, if it is possible at all.

168. The cost to obtain or replace U.S. citizenship documents can be insurmountable. For example, a replacement naturalization certificate costs $555; a first-time applicant for a passport book costs a total of $165, plus the cost of photos; a first-time application for a passport card costs $65, plus the cost of photos; and a birth certificate can cost $15 in fees in Louisiana, and as much as $34 from another state.[46]

169. In addition to those fees, applicants for passports and birth certificates may need to obtain multiple additional documents to prove their U.S. citizenship or identity, which in turn imposes additional costs. These documents may include other documents proving U.S. citizenship and/or government-issued identification.

170. In some instances, individuals must also bear the cost of traveling long distances and taking off or losing hours at work to obtain citizenship documents.

---

[45] *See also Chapter 4 - Automatic Acquisition of Citizenship after Birth (INA 320),* U.S. Citizenship and Immigration Services, https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-4 (last visited May 5, 2025); Obtaining U.S. Citizenship for a Child Born Abroad, U.S. Dep't of State, Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/us-citizenship/Acquisition-US-Citizenship-Child-Born-Abroad.html (last visited May 5, 2025).

[46] *Vital Records Service Fees*, La. Dep't of Health, https://ldh.la.gov/page/service-fees; *Passport Fees*, Mi. Dep't of Health & Human Servs., https://www.michigan.gov/mdhhs/doing-business/vitalrecords/additonal-information/fees_1; U.S. Dep't of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/passports/how-apply/fees.html; *G-1055, Fee Schedule*, U.S. Citizenship and Immigr. Servs. (Jan. 17, 2025), https://www.uscis.gov/g-1055?form=n-565.

171.    Even for those who can afford the cost of obtaining or replacing proof of citizenship documents, wait times may make it impossible for many citizens, including members of Plaintiff organizations, to comply with voter registration deadlines.

172.    For example, the U.S. State Department estimates a processing time of four to six weeks for a routine passport request, which costs between $65 and $195 for a new applicant, and two to three weeks for an expedited request—which requires an additional $60.[47]

173.    In Louisiana, a mailed request for a birth certificate takes eight to ten weeks to fulfill.[48] Walk-in services to obtain a birth certificate are only available at a single Louisiana Department of Health office in New Orleans.[49] To the extent that certified copies of birth records would satisfy S.B. 436's proof of citizenship requirements, they are offered by some (but not all)[50] clerks of court at locations around the state, but there is an additional fee for this service—a cost-prohibitive option that is not feasible for individuals who are struggling to afford the base fee to obtain a birth certificate.[51]

---

[47] *Processing Times for U.S. Passports*, U.S. Dep't of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/passports/how-apply/processing-times.html; *Passport Fees*, U.S. Dep't of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/passports/how-apply/fees.html.

[48]    *How To Order Birth Records*, La. Dep't of Health, https://ldh.la.gov/page/how-to-order-birth-records#:~:text=Vital%20Records%20Registry&text=Please%20complete%20the%20application%20to,8%2D10% 20weeks%20for%20delivery.&text=You%20may%20use%20a%20major,Network%2C%20an%20authorized%20s ervice%20provider.

[49] *Id.*

[50] The Directory of Clerk Birth Certificate Issuance Locations lists 58 Parish Clerk of Court offices. *Directory - Clerk Birth Certificate Issuance Locations*, La. Dep't of Health, https://ldh.la.gov/index.cfm/directory/category/279?pn=6. There are 64 parishes in Louisiana, so not all issue certified copies of birth certificates.

[51]    *How To Order Birth Records*, La. Dep't of Health, https://ldh.la.gov/page/how-to-order-birth-records#:~:text=Vital%20Records%20Registry&text=Please%20complete%20the%20application%20to,8%2D10% 20weeks%20for%20delivery.&text=You%20may%20use%20a%20major,Network%2C%20an%20authorized%20s ervice%20provider. Because S.B. 436 does not indicate what constitutes sufficient proof of citizenship, it is unclear whether a certified copy of a birth certificate will be accepted to register to vote.

174.    Additionally, according to the U.S. Census Bureau's American Community Survey, more than 820,000 of Louisiana's approximately 4.7 million residents were born in a state or territory other than Louisiana, and more than 90,000 are foreign-born naturalized U.S. citizens.[52]

175.    These Louisiana residents may face additional obstacles by having to obtain birth certificates from other states or obtaining copies of their naturalization certificate. Like Louisiana, many other states take several weeks to fulfill birth certificate requests by mail.

### c. Eligible Citizens Who Do Have Proof of Citizenship Documents Are Still Likely to Face Burdens Registering To Vote.

176.    Even those who are able to jump through all of the hoops required to obtain proof of citizenship are still likely to face obstacles complying with S.B. 436.

177.    The plain language of S.B. 436 requires that proof of citizenship be submitted in conjunction with a voter registration application. Assuming attestation under penalty of perjury is not sufficient, this will presumably require those applicants who are able to obtain proof of citizenship to, at a minimum, have access to a scanner and printer to copy proof of citizenship documents and mail or otherwise submit them to the parish registrar.

178.    Further, unlike standard identification documents, individuals are unlikely to have ready access to proof of citizenship at the times when they have the best opportunities to register to vote, including at voter registration events hosted by Plaintiff organizations.

---

[52] *American Community Survey 2023 1-Year Estimates Detailed Tables, B05002 – Place of Birth by Nativity and Citizenship Status*, U.S. Census Bureau, https://data.census.gov/table/ACSDT1Y2023.B05002?q=Louisiana.

## CLAIMS

### COUNT ONE

**Violation of the First and Fourteenth Amendments, 42 U.S.C. § 1983**
**(Unconstitutionally Vague in Violation of Due Process Clause)**
All Plaintiffs Against Defendant Landry

179.    The Fourteenth Amendment commands that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

180.    "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir.), *cert. denied*, 144 S. Ct. 348 (2023).

181.    "A regulation is void for vagueness when it is so unclear that people 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

182.    "[W]here a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (cleaned up).

183.    Because S.B. 436 inhibits core First Amendment activity, including voter registration by eligible voters and voter registration assistance by Plaintiffs and other civic engagement organizations, "a more stringent vagueness test should apply." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 499 (1982).

184.    S.B. 436 provides: "Each applicant shall include with his application proof of United States citizenship."

185.    S.B. 436 does not explain the mechanism by which applicants "shall include" proof of citizenship with their application, including but not limited to whether the proof must be provided in person, whether a copy is acceptable, whether the requirement applies to online registration, and whether the proof must be submitted simultaneously with the voter registration application.

186.    S.B. 436 does not explain what constitutes satisfactory "proof of United States citizenship," including but not limited to which documents will be accepted and whether an individual's name on those documents must match the voter's current name.

187.    S.B. 436 does not provide eligible citizens with sufficient knowledge about how to comply with its provisions in order to exercise their fundamental right to vote.

188.    S.B. 436's proof of citizenship requirement is unconstitutionally vague in violation of the Fourteenth Amendment.

189.    All plaintiffs are and will continue to be irreparably harmed by this violation of constitutional due process.

## COUNT TWO

**Violation of Sections 6 and 9 of the National Voter Registration Act of 1993, 52 U.S.C. §§ 20505(a)(1)-(2), 20508(b)**
**(Attestation Provisions)**
All Plaintiffs Against Defendant Landry

190.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Compliant.

191.    Section 6 of the NVRA allows states to create their own voter registration forms ("State Form") that comply with Section 9 of the NVRA. 52 U.S.C. § 20505(a)(2).

192.    Section 9 of the NVRA provides that the State Form "may require *only* such identifying information (including the signature of the applicant) and other information (including

data relating to previous registration by the applicant), *as is necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1) (emphasis added).

193.    Further, the State Form must include a statement that "specifies each eligibility requirement (*including citizenship*)," "contains an attestation that the applicant meets each such requirement," and "requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20508(b)(2) (emphasis added).

194.    Taken together, Sections 6 and 9 of the NVRA permit Louisiana to create a State Form useable for registration in federal elections which "may require information the Federal Form does not," but Louisiana must "show that the information required on the State Form is 'necessary' to determine the eligibility of the applicant." *Mi Familia Vota I*, 719 F. Supp. 3d at 996 (citing *ITCA*, 570 U.S. at 12).

195.    In line with the requirements of the NVRA, the Louisiana State Form—both before and after the enactment of S.B. 436—requires an applicant to attest under penalty of perjury that they are a United States citizen.

196.    The NVRA's attestation requirement "in every case [i]s the presumptive minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties." *Fish*, 840 F.3d at 738; *Mi Familia Vota v. Fontes* ("*Mi Familia Vota II*"), 129 F.4th 691, 713 (9th Cir. 2025) (citations omitted) (finding documentary proof of citizenship requirement is not "necessary" for new applicants because attestation sufficiently confirms the eligibility of registered voters).

197.    Secretary Landry explained that the proof of citizenship requirement is intended to put "more teeth" into the requirement that only citizens vote in elections than the existing

44

attestation requirements.[53] But Louisiana has made no showing that the attestation requirement is insufficient to carry out its eligibility-assessment and registration duties.

198.    To the extent that S.B. 436 imposes a requirement beyond what is "necessary" to enable state officials to assess the eligibility of voter registration applicants to vote in federal elections, it violates Sections 6 and 9 of the NVRA.

199.    All plaintiffs are and will continue to be irreparably harmed by this violation of the NVRA.

## COUNT THREE

**Violation of Section 6 of the National Voter Registration Act of 1993, 52 U.S.C. § 20505(a)(1)**
**(Accept and Use Provision)**
All Plaintiffs Against All Defendants

200.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

201.    The federal Election Assistance Commission is tasked with developing a mail voter registration application form for elections to federal office ("Federal Form"). 52 U.S.C. § 20508.

202.    The NVRA requires states to "accept and use" the Federal Form in the registration of voters for federal elections. 52 U.S.C. § 20505(a)(1). The Federal Form does not require the applicant to submit any additional documentation along with the application to register to vote.

203.    The Supreme Court has held that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form" because "the NVRA forbids States to demand that an applicant

---

[53] Hearing of La. Senate Comm. On Senate & Gov't Affairs, Statement by Sec. Landry, at 1:49:10 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.

submit additional information beyond that required by the Federal Form" for registration for federal elections. *ITCA*, 570 U.S. at 15.

204.    S.B. 436 amends statutory language concerning use of the state-created voter registration form, and therefore by its own terms only purports to amend the State Form. However, the State has issued no guidance on the implementation of S.B. 436's ambiguous proof of citizenship requirement clarifying that it is so limited.

205.    While Plaintiffs primarily use the State Form, they rely on the Federal Form as a backstop for their voter registration activities. If documentary proof of citizenship were required for the State Form, it is likely that Plaintiffs will begin primarily using the Federal Form in order to continue engaging in their voter registration work.

206.    To the extent that S.B. 436 is construed as applying to Federal Form voter registration applicants, it plainly violates the NVRA's "accept and use" provision and is thus preempted by federal law. *See ITCA*, 570 U.S. at 7-8 (explaining how the NVRA, through the Elections Clause of the U.S. Constitution, preempts state laws that regulate the "Times, Places, and Manner of holding" elections).

207.    All plaintiffs are and will continue to be irreparably harmed by this violation of the NVRA.

## COUNT FOUR

**Violation of Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507(a)(1)**
**(Facial Eligibility Provision)**
All Plaintiffs Against Defendant Landry

208.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Compliant.

209.    Section 8 of the NVRA requires each state to "*ensure* that any eligible applicant is registered to vote in an election" upon the timely submission of a valid voter registration application. 52 U.S.C. § 20507(a)(1) (emphasis added).

210.    A valid registration form with an oath or affirmation under penalty of perjury attesting to one's eligibility is sufficient to establish facial eligibility. *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1194-95 (10th Cir. 2014) (upholding EAC's decision to reject states' requests to add documentary proof of citizenship requirement to state-specific instructions on Federal Form because EAC had validly determined that oath was sufficient to establish eligibility), *cert. denied* 576 U.S. 1055 (2015).

211.    S.B. 436's instruction to decline to register facially eligible applicants who do not provide additional proof of citizenship violates Section 8 of the NVRA.

212.    All plaintiffs are and will continue to be irreparably harmed by this violation of the NVRA.

## COUNT FIVE

**Violation of Section 7 of the National Voter Registration Act of 1993, 52 U.S.C. § 20506 (Public Agencies Provision)**
All Plaintiffs Against All Defendants

213.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Compliant.

214.    The NVRA requires states to designate certain offices as voter registration agencies ("public agencies"): all offices that provide public assistance and all offices that "provide State-funded programs primarily engaged in providing services to persons with disabilities." 52 U.S.C. § 20506(a).

215.    These designated state agencies must offer voter registration using the Federal Form or "its equivalent." 52 U.S.C. § 20506(a)(6)(ii).

216.    To be considered "equivalent" to the Federal Form, voter registration applications distributed by public agencies must be "virtually identical" to the federal form. *Mi Familia Vota I*, 719 F. Supp. at 997; *Mi Familia Vota II*, 129 F.4th at 713.

217.    As such, the NVRA prohibits states from including "information necessary to determine voter eligibility that is not otherwise on the federal form" on voter registration forms provided by public agencies. *Mi Familia Vota II*, 129 F.4th at 714.

218.    Louisiana cannot require applicants using the Federal Form to provide additional proof of citizenship. *See ITCA*, 570 U.S. at 15.

219.    The additional requirement to provide proof of citizenship when registering to vote using the State Form renders it not "equivalent" to the Federal Form.

220.    Any requirement that voter registration applicants at public agencies registering to vote using the State Form provide additional proof of citizenship violates Section 7 of the NVRA.

221.    All plaintiffs are and will continue to be irreparably harmed by this violation of the NVRA.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

222.    Declare that S.B. 436's proof of citizenship requirement violates the First and Fourteenth Amendments;

223.    Declare that S.B. 436's proof of citizenship requirement violates the National Voter Registration Act of 1993;

224.    Preliminarily and permanently enjoin all Defendants from enforcing S.B. 436's proof of citizenship requirement;

225.    Require the Secretary of State to instruct the Registrar of Voters in each parish that S.B. 436's proof of citizenship requirement is enjoined and may not be implemented or enforced;

226.    Award Plaintiffs their costs and reasonable attorneys' fees in this action;

227.    Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

228.    Grant Plaintiffs such other relief as this Court may deem just and proper.


Dated: May 14, 2025                              Respectfully submitted,

/s/ Ahmed Soussi
Ahmed K. Soussi (LSBA # 38414)
Rose Murray (LSBA # 34690)
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Tel: (334) 213-8303
ahmed.soussi@splcenter.org
rose.murray@splcenter.org

/s/ Bradley E. Heard
Bradley E. Heard*
Sabrina Khan*
SOUTHERN POVERTY LAW CENTER
101 17th Street NW, Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
sabrina.khan@splcenter.org

/s/ Robert Weiner
Robert Weiner*
David Rollins-Boyd*
Javon Davis*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20009

/s/ Valencia Richardson
Valencia Richardson (LSBA # 39312)
Danielle Lang*
Alice Huling*
Alexandra Copper*
Heather Szilagyi*
Marisa Wright*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
vrichardson@campaignlegalcenter.org
dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
acopper@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
mwright@campaignlegalcenter.org

Tel: (202) 662-8600
rweiner@lawyerscommittee.org
drollins-boyd@lawyerscommittee.org
jdavis@lawyerscommittee.org

*Counsel for Plaintiffs*

*\*Pro hac vice motion forthcoming*

## CERTIFICATE OF SERVICE

Pursuant to Local Civil Rule 5(e), I certify that upon issuance of the attached summons' by the Clerk of this Court, counsel for plaintiffs will serve a true and correct copy of this complaint, the civil cover sheet, and the appropriate summons on all defendants via certified mail at the following addresses:

Nancy Landry
Louisiana Secretary of State
P.O. Box 94125,
Baton Rouge, LA 70804-9125

Dr. Cade Brumley
Superintendent of Education,
Department of Education
P.O. Box 94064
Baton Rouge, LA 70804-9064

David N. Matlock
Secretary of the Department of Children
& Family Services
P.O. Box 3776
Baton Rouge, LA 70821

Susana Schowen
Secretary of the Workforce Commission
P. O. Box 94094
Baton Rouge, LA 70804-9094

Michael Harrington
Secretary of the Louisiana Department
of Health
P.O. Box 629
Baton Rouge, LA 70821-0629

Misti S. Cordell
Chairwoman, Board of Regents
P. O. Box 3677
Baton Rouge, LA 70821-3677

*/s/ Valencia Richardson*
Valencia Richardson

*Counsel for Plaintiffs*