UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF LOUISIANA; LEAGUE OF WOMEN VOTERS OF LOUISIANA EDUCATION FUND; VOICE OF THE EXPERIENCED; NAACP LOUISIANA STATE CONFERENCE; and POWER COALITION FOR EQUITY AND JUSTICE,<br><br>*Plaintiffs,*<br><br>v.<br><br>NANCY LANDRY, *in her official capacity as Secretary of State for Louisiana*; DAVID N. MATLOCK, *in his official capacity as Secretary of the Department of Children & Family Services*; BRUCE D. GREENSTEIN, *in his official capacity as Secretary of the Department of Health*, DR. CADE BRUMLEY, *in his official capacity as Superintendent of Education for the Department of Education*; SUSANA SCHOWEN, *in her official capacity as Secretary of the Workforce Commission*; and MISTI S. CORDELL, *in her official capacity as Chairwoman of the Board of Regents*,<br><br>*Defendants.* | Civil Action No. 25-413-JWD-SDJ |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

Plaintiffs League of Women Voters of Louisiana and League of Women Voters of Louisiana Education Fund (together, "LWVLA" or "the League"), Voice of the Experienced ("VOTE"), National Association for the Advancement of Colored People Louisiana State Conference ("Louisiana NAACP"), and Power Coalition for Equity and Justice ("Power Coalition," or "PCEJ") submit the following response in opposition to Defendants' Motion to Stay Proceedings, ECF No. 46.

1

Days after receiving Plaintiffs' notice that Act 500 violates the National Voter Registration Act ("NVRA"), Louisiana asked the U.S. Election Assistance Commission ("EAC") to bless the proof of citizenship requirement imposed by Act 500 and that Plaintiffs challenge. The EAC, however, has repeatedly rejected state requests to impose such a proof of citizenship requirement, and for good reason: doing so would violate the NVRA.

Now, Defendants move for a stay of this litigation pending resolution of their untenable request to the EAC. Defendants do not come close to meeting the high standard warranting a stay. The significant hardship and prejudice to Plaintiffs, as well as judicial economy, all weigh strongly against a stay of proceedings. Defendants, on the other hand, offer no particularized showing of hardship or prejudice that would favor a stay. This Court should deny Defendants' Motion.

## BACKGROUND

National Voter Registration Act. In passing the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.*, Congress determined that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). The NVRA therefore "requires States to provide simplified systems for registering to vote in federal elections," *Young v. Fordice*, 520 U.S. 273, 275 (1997) (emphasis omitted). The goal is to "increase the number of eligible citizens who register to vote in elections" and "enhance[] the participation of eligible citizens as voters[,]" while "protect[ing] the integrity of the electoral process[.]" 52 U.S.C. § 20501(b).

The NVRA streamlines voter registration by directing the EAC to create a "mail voter registration application form for elections for Federal office" commonly known as the "National Mail Voter Registration Form" or the "Federal Form." 52 U.S.C. § 20508(a)(2). Each state's chief

election officer is required to submit any state-specific changes to the state's voter eligibility requirements to the EAC. 11 C.F.R. § 9428.6(c). To avoid administering a complex, bifurcated registration and elections process, most states, including Louisiana, accept and use the Federal Form to register voters for state elections in addition to federal elections. *See* La. Stat. Ann. § 18:115; ECF No. 46-1 at 7 ("For the sake of State resources and efficiency . . . 'it is not feasible for Louisiana to maintain a dual voter registration system[.]'").

The NVRA and Proof of Citizenship. In the debates on the NVRA, Congress rejected proposals to allow states to require documentary proof of citizenship in connection with the Federal Form. *See* S. Rep. No. 103-6 (1993); 139 Cong. Rec. 5098–99 (1993); H.R. Rep. No. 103-66, at 23 (1993) (Conf. Rep.); 139 Cong. Rec. 9231–32 (1993).

The NVRA requires sworn attestation of U.S. Citizenship. As mandated by Congress in the NVRA, the Federal Form must include a statement that "specifies each eligibility requirement (including citizenship);" "contains an attestation that the applicant meets each such requirement;" and "requires the signature of the applicant, under penalty of perjury[.]" 52 U.S.C. § 20508(b)(2). The Federal Form must also include, in printed text identical to that used in the attestation, information about the penalties provided by law for submission of a false voter registration application. 52 U.S.C. §§ 20508(b)(4)(i), 20507(a)(5)(B). Further, in passing the Help American Vote Act, Congress mandated that the Federal Form additionally include two specific questions, along with check boxes, for the applicant to indicate whether he or she meets the U.S. citizenship and age requirements to vote, as well as instructions not to complete the form if the answer to either question is no. *See* 52 U.S.C. § 21083(b)(4)(A).

State-developed voter registration forms may require information that the Federal Form does not. But such state-developed forms must still comply with Section 9 of the NVRA and

3

"require only such identifying information . . . and other information . . . as is *necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration[.]" 52 U.S.C. § 20508(b)(1) (emphasis added). Further, the EAC has consistently rejected requests to add that requirement to the Federal Form. *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014) (EAC rejected requests from Arizona and Kansas to include documentary proof of citizenship requirement on state-specific Federal Form instructions); *see also* 78 Fed. Reg. 77666 (Dec. 24, 2013) (Notice for Public Comment) (describing EAC's history of rejecting documentary proof of citizenship requirements for state-specific instructions).

Moreover, no state has ever shown that proof of citizenship is "necessary" to justify requiring it on either the Federal Form or an NVRA-compliant State Form. *See, e.g.*, *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719-20 (9th Cir. 2025); 52 U.S.C. §§ 20505(a)(2), 20508(b)(2)(A)-(B).

Louisiana's Voter Registration System. Louisiana is subject to the requirements of the NVRA. *See* 52 U.S.C. § 20503. As permitted by the NVRA, Louisiana has developed a state voter registration form ("State Form") that applicants may use in addition to the Federal Form, to register to vote for all elections—local, state, and federal. 52 U.S.C. §§ 20508(a)(2), (b); La. Stat. Ann. § 18:115; La. Stat. Ann. § 18:104 (establishing framework for the Louisiana state voter registration form). Like the Federal Form, Louisiana's State Form requires the applicant to attest, under penalty of perjury, that they are a U.S. citizen. La. Stat. Ann. § 18:104(C) (requiring attestation of U.S. citizenship on the State Form); 52 U.S.C. § 20508(b)(2) (requiring attestation of U.S. citizenship on the Federal Form).

4

Act 500's Proof of Citizenship Requirement. Act 500[1] was introduced in the Louisiana Senate in April 2024. Act 500 amends Section 104 of the Louisiana Election Code, which specifies the contents of the state voter registration form, to include the vague statement: "[e]ach applicant shall include with his application proof of United States citizenship." La. Stat. Ann. § 18:104(D)(2). However, it does not explicitly amend other portions of the Louisiana Election Code related to voter registration, including provisions pertaining to online voter registration. *See* La. Stat. Ann. § 18:115.1.

Governor Jeff Landry signed Act 500 into law on June 11, 2024, as Act 500. Act 500 became effective on January 1, 2025. *See* La. Stat. Ann. § 18:104(D)(2).

Commencement of this Lawsuit. On January 28, 2025, Plaintiffs LWVLA, VOTE, Louisiana NAACP, and PCEJ sent Defendants a pre-suit NVRA notice letter pursuant to 52 U.S.C. § 20501(b). Plaintiffs' letter notified Defendants that enforcement of Act 500's proof of citizenship provision would violate Sections 5, 6, 7, 8, and 9 of the NVRA. *See generally* ECF No. 1. To date, Defendants have not responded to Plaintiffs' notice letter.

Having received no indication that Louisiana had corrected the violations within 90 days of delivery of their notice letter, Plaintiffs commenced this lawsuit on May 14, 2025. *See* ECF No. 1. Plaintiffs allege five counts: one violation of the U.S. Constitution and four violations of the NVRA. First, Plaintiffs allege that Act 500's proof of citizenship requirement is unconstitutionally vague in violation of the First and Fourteenth Amendments because Louisiana failed to provide any guidance as to what documents are necessary or sufficient to satisfy the requirement. *Id.* ¶¶ 179-89. Second, Plaintiffs allege that Act 500 violates Sections 6 and 9 of the NVRA ("attestation" provisions) because it imposes a requirement beyond what is "necessary" to enable state officials

---

[1] Plaintiffs' Complaint refers to Act 500 as "S.B. 436," the law's title before it was enacted.

to assess the eligibility of voter registration applicants to vote in federal elections. 52 U.S.C. § 20508(b)(1); ECF No. 1 ¶¶ 190-99. Third, Plaintiffs allege that Act 500 violates Section 6 of the NVRA ("accept and use" provision) and is thus preempted by federal law, to the extent it is construed as applying to Federal Form voter registration applicants. ECF No. 1 ¶¶ 200-10. Fourth, Plaintiffs allege that Act 500's instruction to decline to register facially eligible applicants who do not provide additional proof of citizenship violates Section 8 of the NVRA ("facial eligibility" provision). *Id.* ¶¶ 208-12. Fifth and finally, Plaintiffs allege that requiring proof of citizenship from applicants using the State Form to register to vote at public assistance agencies as a result of Act 500 violates Section 7 of the NVRA ("public agencies" provision). *Id.* ¶¶ 213-21.

Meanwhile, Plaintiffs continue to suffer ongoing and compounding harms as a direct result of Act 500. Because Act 500 does not define what constitutes proof of citizenship and does not explain how that proof must be submitted, Plaintiffs have been hindered in their longstanding efforts to fulfill their core missions of registering voters ahead of upcoming elections. *See, e.g.*, *id.* ¶¶ 19, 36; Ex. 1 ¶¶ 3, 5, 6 7, 8, 9, 10, 11 (Decl. of M. Christian Green, President of LWVLA). On at least two occasions, Plaintiff LWVLA "missed out on the opportunity to mobilize their ready volunteers to register voters" due to being forced to cancel voter registration events because Act 500's vagueness meant "[t]he risk of not complying with the extra proof of citizenship requirement while registering voters was too severe at that point." Ex. 1 ¶ 8. The lack of any guidance as to the information voters must submit has further hampered Plaintiffs' ability to advise prospective voters with confidence in the accuracy of that advice, thereby undermining their reputation as a trusted partner in the voting and elections space and their core mission of facilitating civic participation. *See, e.g.*, ECF No. 1 ¶¶ 35, 47, 51; Ex. 1 ¶¶ 5, 6. Plaintiffs have also been forced to divert resources from their core activities to seek information from registrars and other public

6

officials regarding the requirements of Act 500 and, as best as they can, to educate constituents and other community members about how to register to vote under Act 500's new proof of citizenship requirement. *See* Ex. 1 ¶¶ 5, 7, 10. For instance, Plaintiff LWVLA had planned to pursue projects on voter registration in jails as part of its felony voter rights restoration project and identification document procurement for those experiencing temporary relocation or homelessness, but "LWVLA did not have the resources to pursue these projects in 2025 because it diverted that capacity to navigate [Act 500]'s vague requirement." Ex. 1 ¶ 10.

Since Plaintiffs commenced this lawsuit, the parties have held their required conference under Fed. R. Civ. P. 26(f), and have jointly proposed a schedule for the proceedings. *See* ECF No. 45. At the same time, Defendants have sought two extensions of time to file their responsive pleadings, to which Plaintiffs consented. *See* ECF Nos. 27, 39.

<u>Defendants' Implementation Act 500</u>. Defendant Landry's Office has received multiple requests—some as early as April 2024, shortly after Act 500 was introduced—for more information about the implementation of Act 500's proof of citizenship requirement, including from the Louisiana Office of Motor Vehicles and various parish election officials. *See generally* Exs. 2, 4.[2] To Plaintiffs' knowledge, Defendant Landry has not, to date, provided any guidance to parish registrars regarding the implementation of Act 500.

On January 30, 2025, two days after Plaintiffs sent their NVRA pre-suit notice letter to Defendants and six months after the signing of the bill, Defendant Landry's Office "submitted to the EAC a notice of the changes to Louisiana's voter-eligibility requirements" and "requested

---

[2] Pursuant to Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507(i)(1), Plaintiffs' counsel sent a public records request to Defendant Landry's Office on February 19, 2025, and various parish registrars on March 21, 2025, seeking records related to the implementation of Act 500. Defendant Landry's Office provided the requested records to Plaintiffs' counsel on July 18, 2025. Excerpts of those records are cited and attached as Exhibit 2, and excerpts of records from East Baton Rouge Parish are cited and attached as Exhibit 4.

7

modification to the Louisiana-specific instructions on the Federal Form." ECF No. 46-1 at 2; *see also* ECF No. 46-3.

On February 24, 2025, "the State submitted an amended and supplemental request that included additional modifications to the state-specific instructions on the Federal Form." ECF No. 46-1 at 3; *see also* ECF No. 46-4 ¶ 4.

On May 17, 2025, three days after Plaintiffs commenced this lawsuit, "the State requested the EAC to pause its review of the State's January request so that the State could submit additional evidentiary information." ECF No. 46-1 at 4; *see also* ECF No. 46-4 ¶ 5.

On June 25, 2025, "the State asked the EAC to resume its review and to consider the additional information provided," as well as "flagged another change in the law dictating the State's process for voter registration applications (unrelated to Act 500) and added another request to modify state-specific instructions on the Federal Form related to that change in law." ECF No. 46-1 at 4; *see also* ECF No. 46-4 at 5-10.[3] The State further "requested an effective date of January 15, 2026, for all requested revisions, and asked for a decision from the EAC no later than August 1, 2025." ECF No. 46-1 at 4; *see also* ECF No. 46-4 at 5-6. Defendants have indicated that "the EAC has yet to issue a decision on the State's proposed revisions to the state-instructions on the Federal Form" as of July 24, 2025, and that the EAC has not "indicated it will certainly do so by August 1, 2025."[4] ECF No. 46-1 at 4-5. Indeed, August 1 has now come and gone and the EAC has made no response at all. As far as Plaintiffs are aware, the parish registrars and other election officials are not aware of Defendants' plan to update the Federal Form. *E.g.* Ex. 2 at 1, 2 (requests

---

[3] This "change in law" is related to a bill that was signed into law in January 2024 and provides for closed primary party elections for certain offices in Louisiana. *See* ECF No. 46-4 at 10. That law is not at issue in this case.
[4] Plaintiffs' counsel have directly communicated with defense counsel and requested that they share any response received from the EAC. *See* Ex. 3. Defense counsel responded that as of August 5, 2025, they have not received any response from the EAC. *See id.* Defense counsel also agreed to notify all parties and this Court when they do. *See id.*

for information from election officials during the pendency of Defendant Landry's EAC request). Plaintiffs were only made aware of these requests through a response to a public records request that came mere days before Defendants filed their Motion to Stay Proceedings.[5]

Defendants now seek a stay of all proceedings in this case in light of the proposed changes to the Federal Form submitted by Defendant Landry. ECF Nos. 46, 46-1 at 5. The Court should deny their request.

## LEGAL STANDARD

A court's authority includes "the general discretionary power [] to stay proceedings in the interest of justice and in control of [its] docket," but that discretion is "not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544-45 (5th Cir. 1983). Thus, a court should only exercise "discretion to stay discovery 'for good cause shown'" where the moving party can "show[] that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay." *Voice of the Experienced v. Ardoin* ("*Voice of the Experienced I*"), No. 3:23-cv-331-JWD-SDJ, 2023 WL 7367541, at *1 (M.D. La. Oct. 6, 2023) (citation omitted). Further, "[t]he burden is on the party seeking a stay to show its necessity with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" Order at 2, *Voice of the Experienced v. Landry* ("*Voice of the Experienced II*"), No. 3:23-cv-331-JWD-SDJ **(**M.D. La. Apr. 7, 2025), ECF No. 195 (citations omitted).

## ARGUMENT

In determining whether a stay is appropriate, a court will consider "(1) the potential for hardship and inequity imposed on the parties by proceeding with the action, (2) whether prejudice will result if a stay is imposed, and (3) the interests of judicial economy." Order on Motion to Stay

---

[5] *See supra* note 2.

9

at 2, *Petteway v. Galveston Cnty.*, No. 3:22-cv-57 (S.D. Tex. May 24, 2022), ECF No. 40 (citing *Labouliere v. Our Lady of the Lake Found.*, No. CV 16-00785-JJB-EWD, 2017 WL 4365989, at *10 (M.D. La. Sept. 29, 2017)); *see also Louisiana State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*, 495 F. Supp. 3d 400, 419 (M.D. La. 2020). Additionally, the court may consider where the public interest lies in determining whether a stay of proceedings is appropriate. *See, e.g.*, *Louisiana State Conf.*, 495 F. Supp. 3d at 419. As discussed below, Defendants fail to meet any of the factors warranting a stay of discovery, and this Court should deny Defendants' request.

1. <u>Plaintiffs will suffer undue hardship from a stay of proceedings.</u>

A delay in the litigation to await a possible administrative determination—which is unlikely to change anything, may not be resolved by the end of Defendants' proposed stay period, and will not impact adjudication of most of Plaintiffs' claims—would impose undue hardship on Plaintiffs.

Defendant Landry's request to the EAC is highly unlikely to be accepted. Indeed, despite multiple requests, no state request to require information to determine proof of citizenship beyond the required attestation has *ever* been approved by the EAC. *See, e.g.*, *Kobach*, 772 F.3d at 1189 (EAC rejected requests from Arizona and Kansas to include documentary proof of citizenship requirement on state-specific Federal Form instructions); *see also* 78 Fed. Reg. 77666 (Dec. 24, 2013) (Notice for Public Comment) (describing EAC's history of rejecting documentary proof of citizenship requirements for state-specific instructions). As such, Defendants effectively request that this Court stay all proceedings just in case the EAC reverses itself and acts contrary to all of its prior actions on an identical issue. Moreover, the EAC's determination one way or the other has no bearing on Defendants' ability to respond to Plaintiffs' Complaint or proceed with

discovery. By definition, a responsive pleading under Fed. R. Civ. P. 12 does not require factual development, and the possibility of additional facts developing does not prevent a court from considering the parties' pleadings. *See, e.g.*, *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). To the extent that the factual development is relevant to adjudication, the EAC's requested determination only affects some of Plaintiffs' claims.[6] Specifically, the EAC's determination regarding the Federal Form is not dispositive to Plaintiffs' claims regarding the State Form,[7] nor would it affect Plaintiffs' allegations about the unconstitutional vagueness of Act 500, among other claims. Thus, denying the stay request would not "forc[e]" either party to "prematurely litigate" because the proceedings of this case do not depend on the EAC's determination. ECF No. 46-1 at 9.

Defendants' requested delay would further erode Plaintiffs' ability to prepare for upcoming elections. As Plaintiffs alleged in the Complaint, Plaintiffs' injuries are ongoing, *see* ECF No. 1 ¶¶ 179-89. Plaintiffs have already diverted financial and time resources from their core activities to gather information from registrars and other public officials about what Act 500 requires and educate constituents and other community members about how to register to vote under Act 500's new proof of citizenship requirement. *See* Ex. 1 ¶¶ 5, 7, 10. Thus, Plaintiffs are already suffering

---

[6] Regardless of the EAC's ultimate decision, many of Plaintiffs' legal arguments will remain unchanged and ripe for adjudication. For example, Count Two alleges that Act 500's proof of citizenship requirement is inconsistent with the NVRA's mandate that States "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." ECF No. 1 ¶ 192 (citing 52 U.S.C. § 20508(b)(1)). Defendants do not purport to change the State Form in their request to the EAC, such that Count Two would remain unchanged. Moreover, Count Four alleges that proof of citizenship—either on the State Form or Federal Form—violates the NVRA because "[a] valid registration form with an oath or affirmation under penalty of perjury attesting to one's eligibility is sufficient to establish facial eligibility," such that "S.B. 436's instruction to decline to register facially eligible applicants who do not provide additional proof of citizenship violates Section 8 of the NVRA." ECF No. 1 ¶ 210-11 (citing *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1194-95 (10th Cir. 2014). As such, the state-specific instructions that Defendant requests would still violate the NVRA as alleged by Plaintiffs in Count Four.

[7] As noted previously, Act 500 only purports to amend the State Form, *see* La. Stat. Ann. § 18:104(D)(2), and the EAC proposal would only amend the state-specific instructions to the Federal Form. But, to Plaintiffs' knowledge, Defendants have not thus far disclosed any plans for implementing Act 500 with respect to the State Form.

and will continue to suffer injuries as a result of Act 500. For this reason, Defendants' contention that Plaintiffs' injuries "will not occur until the effective date" of the Federal Form revisions, ECF No. 46-1 at 9, falls flat. In addition to the ongoing, concrete harms imposed on Plaintiffs, any threatened enforcement of a facially invalid statute constitutes an injury. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-61 (2014); *Umphress v. Hall*, 133 F.4th 455, 464 (5th Cir. 2025). A stay would unnecessarily postpone resolution of Plaintiffs' claims, prolonging the uncertainty and ongoing harm Plaintiffs face in attempting to register and assist others with voter registration.

Defendants, for their part, have failed to allege any "particular and specific demonstration of fact" regarding any hardship or prejudice they will face by continuing to litigate this case. Order at 2, *Voice of the Experienced II*, No. 3:23-cv-331-JWD-SDJ (internal quotations and citations omitted). Indeed, they do not even claim to be burdened by "the usual inconveniences and costs that are associated with discovery practice." *Ashford Inc. v. Unite Here*, No. 3:15-cv-0262-M, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015). Instead, they merely claim that they will be in a "strange position" of litigating this case while the EAC determination is pending. ECF No. 46-1 at 8. But the existence of this implementation request alone does not warrant a stay. *Magana v. Shore Construction, LLC*, No. 17-cv-1896, 2017 WL 2911353, at *5 (E.D. La. July 6, 2017). In *Magana*, the court held that the defendants did not "carr[y] their burden to demonstrate that the incurrence of litigation expenses associated with the instant action while cooperating with the DOL investigation constitutes undue hardship" where the administrative action was not determinative of the litigation. *Id.* Likewise, the EAC's determination will not determine the outcome of the litigation, because many of Plaintiffs' legal claims will remain the same, Defendants will still be required to respond to Plaintiffs' Complaint regardless of how the EAC responds (and the EAC

will likely reject Defendant Landry's proposed changes to the Federal Form). Thus, Defendants have not made a particularized showing that continuing to litigate this case would impose any hardship on them. *Id.*; *cf. Labouliere*, 2017 WL 4365989, at *10 (only granting a stay where "duplicative discovery would be avoided" between simultaneous state and federal court lawsuits).

Finally, Defendants cannot now claim that they will be burdened absent a stay based on their own delayed implementation of Act 500's proof of citizenship requirement through the proposed changes to the Federal Form. *See State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) ("The self-inflicted nature of the government's asserted harm severely undermines its claim for equitable relief.") (citations omitted) (internal quotation marks omitted). Defendants have yet to provide guidance to the public or local election officials about Act 500, despite repeated requests. *See generally* Exs. 2, 4. Only after the bill's effective date did Defendants—unbeknownst to other stakeholders, including Plaintiffs—take steps to contact the EAC about updating the state-specific instructions to the Federal Form. *Compare* ECF No. 46-3 *with* La. Stat. Ann. § 18:104(D)(2) (effective date Jan. 1, 2025). Any supposed burden Defendants now claim stems from their own actions, including their delayed timing in submitting and subsequently delaying their request to the EAC, and thus does not constitute the kind of hardship sufficient to warrant a stay.

At bottom, Plaintiffs' hardship from the ongoing uncertainty—which the EAC's determination would not resolve—far outweighs any hardship claimed by Defendants. Therefore, the threat of undue hardship weighs strongly against a stay of proceedings.

2. <u>Plaintiffs will be prejudiced by a stay.</u>

Delayed litigation would prejudice Plaintiffs' ability to obtain relief ahead of the next federal election and further prolong their injuries without justification.

Despite Defendants' claim otherwise, even a "short delay" would prejudice Plaintiffs'

13

ability to obtain adequate relief for the next federal election. ECF No. 46-1 at 9. Defendants did not inform Plaintiffs of Defendant Landry's requested changes to the Federal Form—neither at the time of the request, *see supra* discussion at 7, nor when Plaintiffs agreed to Defendants' two requests for extensions to respond to the Complaint, *see* ECF Nos. 27, 39. Plaintiffs were also not informed that, as a result of this request, Defendants intended to seek a stay during the parties' required conference under Fed. R. Civ. P. 26(f). Plaintiffs can no longer accommodate Defendants' efforts to delay because it will prejudice Plaintiffs' rights. Any action by the EAC will not obviate Plaintiffs' claims. *See supra.* Indeed, were the EAC to grant Defendants' request, it would only spur further litigation. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 9-12 (D.C. Cir. 2016) (holding that plaintiffs established a substantial likelihood of success on the merits of a claim against multiple States' request to modify state-specific instructions to the Federal Form to require submission of proof of citizenship). As such, a stay would not only prolong Plaintiffs' injuries, but "any delay in reaching a final ruling in this case—and a stay would almost certainly cause such a delay—could impair this court's ability to issue effective relief later." *See* Order on Motion to Stay at 3, *Petteway*, No. 3:22-cv-57 (citing *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring); *see also infra* Part IV. Louisiana's 2026 primary and municipal elections have a registration deadline of March 28 and will be held on April 18, while the congressional elections have a registration deadline of October 13 and will take place on November 3.[8] Thus, Plaintiffs have a little more than a year until the next federal general election, and less than eight months until the federal primary: a time period which this Court has previously recognized as "such a relatively short time" that "any delay in litigation could harm Plaintiffs' ability to obtain relief before the next election." *Voice of the Experienced I*, 2023 WL 7367541, at

---

[8] *See 2026 Elections*, La. Sec'y of State (Nov. 2024), https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/ElectionsCalendar2026.pdf.

*2. Defendants' requested 60-day stay would not even begin until the issuance of this Court's order, and thus could delay this case for several months, during which time the EAC administrative process could have already occurred, and Plaintiffs' injuries will be pushed even closer to the voter registration deadline.

As such, Plaintiffs will have been prejudiced well before Defendant Landry's proposed effective date of January 15, 2026 for the Federal Form changes. Plaintiffs have to plan and expend resources for their voter registration activities related to the 2026 federal elections well in advance of mid-January 2026. *See, e.g.*, ECF No. 1 ¶¶ 19, 36 ("The League needs to plan for voter registration activities well in advance—including allocating funds or other necessary resources, organizing and training volunteers, and purchasing or otherwise procuring voter registration equipment."); Ex. 1 ¶¶ 7, 9, 11. Contrary to Defendants' claim, then, a stay would markedly disrupt the "status quo" by delaying election-related litigation without sufficient justification. *Compare* ECF No. 46-1 at 9 *with Louisiana State Conf.*, 495 F. Supp. 3d at 419 (denying a stay where a stay would result in the denial of the right to vote) (citing *Chisom v. Edwards*, 690 F. Supp. 1524, 1535 (E.D. La. 1988)). In this case, the right to register to vote in federal elections is at stake, an injury that specifically cannot be redressed by delayed relief. *See id.* The "status quo" in an election case—and the regular practice in this District, *see Voice of the Experienced I*, 2023 WL 7367541, at *2—is to move promptly in consideration of the upcoming election. *Louisiana State Conf.*, 495 F. Supp. 3d at 419. ("In fact, denying a stay would allow the discovery to proceed in the Middle District, and this would advance the litigation rather than stall it (as a grant of stay would).").

Therefore, the significant prejudice to Plaintiffs strongly weighs against a stay.

3. <u>Judicial economy weighs in favor of denying the stay.</u>

Judicial economy would be undermined by delaying litigation to await an agency decision

15

that lacks a clear deadline and will ultimately fail to resolve—or even meaningfully address—the core issues at stake in this case.

Far from "conserving judicial and party resources," ECF No. 46-1 at 8, delaying Plaintiffs' ability to obtain relief in favor of awaiting an uncertain, non-dispositive agency decision would prevent efficient adjudication of Plaintiffs' claims.[9] Defendants appear to claim that allowing the EAC process to unfold will conserve judicial and party resources by eventually providing clarity about the content of the state-specific instructions on the Federal Form. *See id.* But as noted above, there is no circumstance in which the EAC's acceptance of the state's proposal will obviate all of Plaintiffs' claims, nor is there any basis to believe that the EAC could, consistent with the requirements of the NVRA, grant Defendant Landry's request. And even if the EAC did so, it would only spur further litigation, not end this suit. Thus, delaying litigation without sufficient justification would undermine judicial efficiency by prolonging the resolution of questions that this Court will have to resolve regardless. Proceeding now allows this Court to address these issues without unnecessary delay or expenditure of resources.

Despite Defendants' claim, granting a stay is not "consistent with the approach this Court has taken in other litigation." ECF No. 46-1 at 7. In fact, this Court has repeatedly denied stay motions in similar situations. *See, e.g.*, *Voice of the Experienced I*, 2023 WL 7367541 (denying defendant's motion to stay); Order, *Voice of the Experienced II*, No. 3:23-cv-331-JWD-SDJ (same); *Mapp v. UMG Recordings, Inc.*, No. CV 15-602-JWD-RLB, 2016 WL 11780233 (M.D. La. Apr. 19, 2016) (same). And the EAC's determination is not a final adjudication about the legality of Act 500, so "the underlying legal landscape" is not "poised to shift" at all. ECF No. 46-

---

[9] Moreover, Defendants' argument that "serious ripeness concerns [] will arise" out of further adjudication proves too much. ECF No. 46-1 at 7 n.4. If Defendants believe that Plaintiffs' claims are not ripe, the proper forum to litigate the issue is a responsive pleading. A motion to stay would not alleviate that purported concern.

1 at 7. Further, Landry's request to the EAC—submitted two days after Plaintiffs sent their NVRA notice letter—seeks approval for the very provision challenged in the notice letter: Act 500's proof of citizenship requirement. Granting a stay based on such a request would allow Defendants to bypass the normal process of federal courts and muddy the issues by shifting the dispute into an administrative form *after* receiving notice of a violation. Doing so would also place the Court's timetable at the mercy of the pace at which the agency lumbers along. Thus, as this Court has recognized, judicial economy is best advanced by rejecting efforts to unnecessarily delay the normal progression of litigation.

Therefore, judicial economy does not support a stay.

4. <u>The public interest weighs against a stay.</u>

Finally, the public interest is best served by providing clarity to Plaintiffs and Louisiana voters through the prompt and efficient adjudication of Plaintiffs' constitutional and statutory claims.

Courts have long recognized that timely adjudication of election-related cases is essential to preventing voter confusion and administrative disruption. *See Purcell v. Gonzalez*, 549 U.S. 1, 5-6 (2006) (recognizing that court-ordered changes to election procedures close to an election can result in voter confusion and undermine electoral integrity); *Milligan*, 142 S. Ct. at 880-81 (Kavanaugh, J., concurring); *see also, e.g.*, *Rodriguez v. Grand Prairie Indep. Sch. Dist.*, No. 3:13-CV-1788-D, 2014 WL 4055364, at *2 (N.D. Tex. Aug. 15, 2014) (denying a stay of proceedings because the public is "entitled to a court decision that confirms that [the elections at issue] are being conducted in compliance with" federal law).[10] In light of the upcoming April 2026 primary

---

[10] This is true regardless of whether Plaintiffs seek preliminary relief. *Cf.* ECF 46-1 at 9. Because "once the election occurs, there can be no do-over and no redress," courts generally understand the public interest lies in prompt and

elections and November 2026 general elections, general equitable principles favor prompt relief. *See Clark v. Roemer*, 777 F. Supp. 471, 484 (M.D. La. 1991) (quoting *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)) ("In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles . . . "). Because "compressing the amount of time available to litigate this case will only make it more difficult for both the court and the parties to ultimately achieve a just and lawful result" ahead of the next federal election, the public interest weighs against a stay in this case. *See* Order on Motion to Stay at 3, *Petteway*, No. 3:22-cv-57. Thus, the public interest is best served by denying Defendants' stay request.

* * *

Defendants have not met the demanding showing for each of the required factors sufficient to grant a stay. Moreover, the outcome and timing of the EAC's action remain uncertain and are precipitated by Defendants' own effort to create a parallel forum to complicate proceedings in this one. That action will not affect several claims in this case, and even if the EAC approves the proposed changes to the Federal Form, their legality will likely be disputed. As such, the motion for stay should be denied. At minimum, Plaintiffs request that this Court allow Plaintiffs to proceed on all claims unrelated to the Federal Form.

---

efficient adjudication of election-related disputes. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Stay Proceedings.

Respectfully submitted this 6th day of August, 2025.

/s/ Valencia Richardson
Valencia Richardson (LSBA # 39312)
Danielle Lang*
Alice Huling*
Anna Baldwin*
Alexandra Copper*
Heather Szilagyi*
Marisa Wright*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
vrichardson@campaignlegalcenter.org
dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
acopper@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
mwright@campaignlegalcenter.org

/s/ Ahmed Soussi
Ahmed K. Soussi (LSBA # 38414)
Rose Murray (LSBA # 34690)
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Tel: (334) 213-8303
ahmed.soussi@splcenter.org
rose.murray@splcenter.org

/s/ Bradley E. Heard
Bradley E. Heard*
Sabrina Khan*
SOUTHERN POVERTY LAW CENTER
101 17th Street NW, Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
sabrina.khan@splcenter.org

/s/ Robert Weiner
Robert Weiner*
David Rollins-Boyd*
Javon Davis*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20009
Tel: (202) 662-8600
rweiner@lawyerscommittee.org
drollins-boyd@lawyerscommittee.org
jdavis@lawyerscommittee.org

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, August 6, 2025 I electronically filed the foregoing Response with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record who are registered with the Court's CM/ECF system.

/s/ Valencia Richardson
Valencia Richardson

*Counsel for Plaintiffs*
