## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**LEAGUE OF WOMEN VOTERS OF**
**LOUISIANA, ET AL.**
                                 **CIVIL ACTION**

**VERSUS**
                                 **NO. 25-413-JWD-SDJ**

**NANCY LANDRY, ET AL.**

## RULING AND ORDER

This matter comes before the Court on *Defendants' Motion to Stay Proceedings* ("*Motion to Stay*") (Doc. 46) filed by Defendants Nancy Landry, David Matlock, Bruce Greenstein,[1] Cade Brumley, Susana Schowen, and Misti Cordell (collectively, "Defendants"). Plaintiffs League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, Voice of the Experienced, NAACP Louisiana State Conference, and Power Coalition for Equity and Justice (collectively, "Plaintiffs") oppose this motion. (Doc. 49.) Defendants filed a reply. (Doc. 52.) Subsequently, Defendants also filed a *Notice of Supplemental Authority* ("*Notice*") (Doc. 53). Plaintiffs responded to this *Notice*, (Doc. 54), and Defendants filed a reply, (Doc. 55).

Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' *Motion to Stay* is denied.

## I.    RELEVANT BACKGROUND

### A.  Factual Background

The National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, allows registration via a "mail voter registration application form" ("Federal Form") or a state-developed equivalent ("State Form"), *see id.* § 20505(a)(1)–(2). The Federal Form includes state-specific

---

[1] In March 2025, Defendant Michael Harrington retired, and Bruce Greenstein assumed the role of Secretary of the Louisiana Department of Health. (Doc. 46 at 1 n.1.) Greenstein has therefore been substituted for Harrington.

instructions, which "must be approved" by the Election Assistance Commission ("EAC"). *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5–6 (2013) [hereinafter *ITCA*]. The Federal Form "does not require documentary evidence of citizenship," just attestation, "under penalty of perjury, that [the applicant] is a citizen." *Id.* at 4–5; *accord* 52 U.S.C. § 20508(b)(1)–(2). The State Form "may require information the Federal Form does not." *ITCA*, 570 U.S. at 12. But the State Form "may require only such identifying information . . . as is necessary to enable the appropriate State election official to assess" an applicant's eligibility to register to vote. 52 U.S.C. § 20508(b)(1).

Recently, Louisiana's Act 500 amended Louisiana Revised Statutes § 18:104 to require applicants for voter registration to "include with [their] application[s] proof of United States citizenship." *See* La. R.S. § 18:104(D)(2). "Louisiana was required to inform the EAC" of this change. (Doc. 46-1 at 2 (citing 11 C.F.R. § 9428.6(c)).) Louisiana (via Defendant Landry) has therefore requested that the EAC approve revisions to the state-specific instructions included in the Federal Form. (*Id.* (citing Doc. 46-3 at 2).) In her letter to the EAC, Defendant Landry "explained that it would be extremely inefficient and burdensome for Louisiana to maintain dual voter registration implementation and verification practices"—that is, to use different forms for federal versus state elections. (Doc. 46-1 at 3 (citing Doc. 46-3 at 2); *see also* Doc. 49 at 3 ("To avoid administering a complex, bifurcated registration and elections process, most states, including Louisiana, accept and use the Federal From to register voters for state elections in addition to federal elections.").) She added that "it will be more efficient to amend the State [F]orm following the approval by the EAC" of the requested revisions to the Federal Form. (Doc. 46-3 at 2.)

### B. Procedural Background

Act 500 was approved on June 11, 2024. 2024 La. Sess. Law Serv. Act 500 (S.B. 436). Consistent with the NVRA's notice requirement, *see* 52 U.S.C. § 20510(b)(1)–(2), Plaintiffs sent

a letter to Defendant Landry on January 28, 2025, notifying her that Act 500's requirement of "documentary proof of citizenship to register and vote . . . violates the [NVRA]," (Doc. 1-1 at 3 (citing La. R.S. § 18:104(D)(2))). On January 30, 2025—two days after receiving notice, but more than 200 days after Act 500 was approved—Louisiana requested that the EAC consider revisions to the state-specific instructions included in the Federal Form. (*See* Doc. 46-3 at 2.)

Below is a timeline of relevant events since Louisiana's initial request to the EAC:

- **February 24, 2025:** Louisiana modified its request to the EAC to include additional revisions. (Doc. 46-4 at 5.)

- **May 14, 2025:** Plaintiffs filed their Complaint, alleging violation of the First and Fourteenth Amendments, as well as NVRA Sections 6, 7, 8, and 9 (52 U.S.C. §§ 20505(a)(1)–(2), 20506, 20507(a)(1), 20508(b)). (Doc. 1 at 42–48, ¶¶ 179–221.)

- **May 17, 2025:** Louisiana asked the EAC to pause review of the requested revisions "to provide an opportunity for the State to submit additional [relevant] evidentiary information." (Doc. 46-4 at 5.)

- **June 25, 2025:** Louisiana asked the EAC to resume its review—and to review additional requested revisions. (*Id.*)

- **July 24, 2025:** Defendants filed their *Motion to Stay*, arguing that the Court should stay proceedings for 60 days in order to give the EAC time to respond to Louisiana's requested revisions. (Doc. 46-1 at 5.)

- **September 11, 2025:** The EAC informed Louisiana that it had rejected the requested revisions. (Doc. 53 at 1.)

- **September 12, 2025:** Defendants filed their *Notice* of the EAC's rejection. (*Id.*)

- **September 26, 2025:** Plaintiffs filed a response to Defendants' *Notice*, arguing that the EAC's rejection effectively mooted Defendants' *Motion to Stay*. (Doc. 54 at 2.) On the same day, Louisiana requested that the EAC reconsider its rejection of one of the requested revisions (Option 1(B)). (Doc. 55-1 at 2.)

- **November 10, 2025:** Louisiana asked the EAC to pause its review. (Doc. 58-1 at 2.)

- **November 20, 2025:** Louisiana requested that the EAC reconsider its rejection of the other requested revision (Option 1(A)), citing new information "demonstrat[ing] the [revision's] necessity." (*Id.* at 3.) The State also asked the EAC to resume review of Option 1(B) and to render decisions as to both options. (*Id.*)

3

## II.   STANDARD

"The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982); *accord Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706 (1997). When deciding whether to grant a stay of proceedings, a court must "weigh competing interests." *Landis*, 299 U.S. at 254–55. Specifically, it must consider: (1) the hardship and inequity which the movant will suffer if the stay is *not* granted, (2) the prejudice which the non-movant will suffer if the stay *is* granted, and (3) judicial economy. *Abrams v. Ochsner Clinic Found.*, No. 17-1755, 2018 WL 2746046, at *3 (M.D. La. June 7, 2018) (citing *Scott v. N. La. Med. Ctr.*, No. 16-376, 2016 WL 8470184, at *13 (W.D. La. Sept. 9, 2016)); *accord Falgoust v. Microsoft Corp.*, No. 00-779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000).

A court must also be mindful of its "'paramount' obligation to timely hear the cases on its docket." *SP Plus Corp. v. IPT, LCC*, No. 16-2474, 2017 WL 1423882, at *2 (E.D. La. Mar. 23, 2017) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)); *see also Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) ("[A] court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay.").

The movant bears the burden of showing that a stay is warranted. *Magana v. Shore Constr., LLC*, No. 17-1896, 2017 WL 2911353, at *3 (E.D. La. July 6, 2017) (citing, *inter alia*, *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)); *see also Landis*, 299 U.S. at 255; *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983); *Coastal (Berm.) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) ("Generally, the moving party bears a heavy burden to

4

show why a stay should be granted absent statutory authorization . . . . Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation.").

Lastly, a stay must be of a moderate and definite duration. *See McKnight*, 667 F.2d at 479 ("[S]tay orders *will* be reversed when they are found to be immoderate or of an indefinite duration." (emphasis added)); *see also In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citing *McKnight*, 667 F.2d at 479).

## III.     DISCUSSION

### A.  Parties' Arguments

#### 1.  *Defendants' Motion to Stay (Doc. 46)*

Defendants have requested a stay of proceedings "to allow a reasonable amount of time for the EAC administrative process to be completed." (Doc. 46-1 at 5.) They argue that a stay "best serves the interests of judicial economy" and that Plaintiffs will suffer no hardship or prejudice as a result of a stay. (*Id.*)

Under the "hardship and inequity" prong, Defendants contend that, without a stay, they "will be placed in the stange position of waiting for a determination from the EAC . . . while simultaneously litigating the same EAC-contin[g]ent revisions." (*Id.* at 8.) "That would burden both the State Defendants and this Court." (*Id.* (citing *Strong ex rel. Tidewater, Inc. v. Taylor*, No. 11-392, 2013 WL 818893, at *4 (E.D. La. Mar. 5, 2013)).)

Under the "prejudice" prong, Defendants aver that "Plaintiffs will not be prejudiced by a 60-day stay" because (1) it was "reasonably foreseeable" that Defendants would seek a stay pending the EAC's decision of the requested revisions to the state-specific instructions included in the Federal Form, (*id.* at 9 (citing *United States v. FEDCON Joint Venture*, No. 16-13022, 2017 WL 897852, at *3 (E.D. La. Mar. 7, 2017))), and (2) "short delays are not prejudicial," (*id.* (citing

*Falgoust*, 2000 WL 462919, at *2)). Defendants add that, since the effective date for the requested revisions is January 15, 2026, Plaintiffs are not currently suffering any injury. (*Id.*) In other words, Defendants say, "a stay does nothing more than preserve the status quo." (*Id.*)

Lastly, under the "judicial economy" prong, Defendants note that Louisiana "has asked for a quick decision" from the EAC, "as '[i]t is not feasible for [the State] to maintain a dual voter registration system.'" (*Id.* at 7 (quoting Doc. 46-3 at 2).) Defendants expect that the EAC's "quick decision" will resolve some issues underlying the instant case, such that "[f]orcing litigation at this point would waste everyone's time and resources." (*Id.* (citing, *inter alia*, *FEDCON*, 2017 WL 897852, at *3).) Defendants argue that the "public interest would be better served by conserving judicial and party resources" here. (*Id.* at 8 (quoting Order (Doc. 752) at 1, *Clark v. Edwards*, No. 3:86-cv-00435 (M.D. La. July 17, 2025) (deGravelles, J.)).) They also suggest that a stay would be "consistent with" this Court's approach in other cases where the legal landscape is shifting or may soon shift. (*Id.* at 7–8 (citing, *inter alia*, Order (Doc. 752) at 1, *Clark*, No. 3:86-cv-00435).)

### 2. *Plaintiffs' Opposition (Doc. 49)*

Plaintiffs counter that the three prongs "all weigh strongly *against* a stay of proceedings."[2] (Doc. 49 at 2 (emphasis added).) Under the "hardship and inequity" prong, Plaintiffs note that Defendants' requested revisions are "unlikely to change anything" and "may not be resolved"

---

[2] Plaintiffs also posit that the Court should consider a fourth factor—the public interest—"in determining whether a stay of proceedings is appropriate." (Doc. 49 at 10 (citing *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 419 (M.D. La. 2020) (deGravelles, J.)).) For their part, Defendants fold "public interest" into the "judicial economy" prong. (*See* Doc. 46-1 at 8.) Notably, the case which Plaintiffs have cited in support of their position dealt with a stay pending appeal. *See La. State Conf. of NAACP*, 495 F. Supp. 3d at 419. A four-factor test—which includes public interest—governs motions for stay pending appeal. *See, e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (reciting the test). But "courts do not customarily employ this 'four-factor test' in evaluating motions for stays of entire proceedings." *SP Plus*, 2017 WL 1423882, at *2. Rather, "courts use a similar but distinct balancing test." *Id.* The Court agrees, however, that "public interest" can sometimes, as here, surface in the context of one or another relevant factor. *See, e.g*, *Ohio Env't Council*, 565 F.2d at 396 ("[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that the other party *nor the public* will suffer harm from entry of the order." (emphasis added)); *Rodriguez v. Grand Prairie Indep. Sch. Dist.*, No. 13-1788, 2014 WL 4055364, at *2 (N.D. Tex. Aug. 15, 2014) (considering the public interest in a speedy resolution of a Voting Rights Act case).

within 60 days. (*Id.* at 10.) They stress that the EAC will probably deny Defendants' requests, (*id.* (citing, *inter alia*, *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014))), and that, regardless, the EAC's decision "has no bearing on Defendants' ability to respond to Plaintiffs' Complaint or proceed with discovery," (*id.* at 10–11). At most, Plaintiffs say, the EAC's decision "only affects some of Plaintiffs' claims." (*Id.* at 11 & n.6.) Thus, there is no risk of premature litigation. (*Id.* at 11.)

Under the "prejudice" prong, Plaintiffs explain that a delay would hamper their "ability to prepare for upcoming elections." (*Id.*) Specifically, "Plaintiffs have already diverted"—and are continuing to divert—resources away from their "core activities" and toward (1) "gather[ing] information from registrars and other public officials about what Act 500 requires" and (2) "educat[ing] constituents and other community members about how to register to vote under Act 500's new proof of citizenship requirement." (*Id.* (citing Doc. 49-1 at ¶¶ 5, 7, 10).) Plaintiffs also contend that Defendants have not demonstrated that they will suffer some particular hardship (or prejudice) if the Court denies the *Motion to Stay*. (*Id.* at 12–13.) There is not even a risk of unnecessary litigation, because the EAC's decision cannot resolve many of Plaintiffs' claims. (*Id.*) Finally, Plaintiffs suggest that whatever hardship Defendants' endure is at least partly self-inflicted because Defendants delayed submitting—and then stalled—their request to the EAC. (*Id.* at 13 (citing, *inter alia*, *State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)).)

Plaintiffs reiterate that "[a]ny action by the EAC will not obviate Plaintiffs' claims. Indeed, were the EAC to grant Defendants' request, it would only spur further litigation." (*Id.* at 14 (internal citations omitted) (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9–12 (D.C. Cir. 2016)).) Plaintiffs warn that a stay "would not only prolong [their] injuries" but could also "impair this [C]ourt's ability to issue effective relief later." (*Id.* (quoting Order on Motion to

Stay (Doc. 40) at 3, *Petteway v. Galveston Cnty.*, No. 3:22-cv-00057 (S.D. Tex. May 24, 2022)
(citing *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring)).) Plaintiffs
note the approaching deadlines for state and federal elections occurring in 2026. (*Id.* at 14–15.)
They explain that they "will have been prejudiced well before Defendant Landry's proposed
effective date of January 15, 2026[,] for the Federal Form changes," because they need to "plan
and expend resources for their voter registration activities . . . well in advance." (*Id.* at 15 (citing
Doc. 1 at ¶¶ 19, 36; Doc. 49-1 at ¶¶ 7, 9, 11).)

Lastly, under the "judicial economy" prong, Plaintiffs emphasize once more that, because
the EAC's decision will not resolve the issues underlying the instant case, a delay will merely
prolong litigation and, in the process, waste judicial resources. (*Id.* at 16.) Plaintiffs fault
Defendants for "creat[ing] a parallel forum to complicate proceedings in this [Court]." (*Id.* at 18.)
They add that "public interest" weighs in favor of denying the stay, because "'compressing the
amount of time available to litigate this case will only make it more difficult for both the [C]ourt
and the parties to ultimately achieve a just and lawful result' ahead of the next federal election."
(*Id.* (quoting Order on Motion to Stay (Doc. 40) at 3, *Petteway*, No. 3:22-cv-00057).)

### 3. *Defendants' Reply (Doc. 52)*

Defendants note that Louisiana only requested that the EAC consider including "additional
requirements of a 'unique immigration identifier' number" or, alternatively, "'sex' and 'mother's
maiden name'" in the state-specific instructions included in the Federal Form. (Doc. 52 at 2.) They
argue that "a short 60-day stay makes especially good sense to see the result of [this] request" to
the EAC, because the result "will substantially alter the landscape of this case." (*Id.* at 3.)
Defendants add that, if approved, the EAC revisions likely will not become effective until January
15, 2026. (*Id.*) "To litigate—and worse, to adjudicate—this case on dual-track contingencies

would risk misleading the public about what requirements do (or do not) exist yet . . . ." (*Id.*; *see also id.* at 4 ("[T]he purpose of a short, status-quo stay is not to end the case; it is to avoid duplicative tracks while the EAC has the opportunity to . . . clarify or narrow what warrants adjudication now.").)

Defendants repeat that "all factors support a stay." (*Id.*) They insist that Plaintiffs' asserted hardship and prejudice "are overstated," because Defendants will not require prospective voters to include proof of U.S. citizenship in their applications for registration during the stay. (*Id.* at 5–6.) On the other hand, Defendants claim that they will suffer hardship and prejudice if forced to "litigate Federal Form questions while the EAC considers the *same subject*." (*Id.* at 6.) On this note, Defendants contend that the "judicial economy" prong also weighs in their favor, maintaining that "[a]ny agency response . . . fixes the posture, focuses what is fit for decision, and reduces the risk of re-briefing." (*Id.*) Thus, Defendants say, a "modest and definite" stay of 60 days is warranted. (*Id.* at 7 (citing, *Landis*, 299 U.S. at 254–55; *McKnight*, 667 F.2d at 479).)

### 4. Parties' Exchange re: Defendants' Notice (Docs. 53–55)

In September 2025, the EAC notified Defendant Landry that it had rejected the requested revisions to the state-specific instructions included in the Federal Form. (Doc. 53 at 1.) Specifically, the EAC found that the requested revisions imposed additional requirements for registration using the Federal Form. (*See* Doc. 54-1 at 6.) In a 2–2 vote, the EAC rejected the first requested revision (Option 1(A)) and "did not independently consider" the second requested revision (Option 1(B)). (*Id.*) The EAC allowed Louisiana to request independent consideration of Option 1(B). (*Id.*)

Plaintiffs argue that, because the EAC has now rendered a decision, Defendants' request for a stay is effectively moot. (*See* Doc. 54 at 2 ("Defendants' sole purported justification for

asking this Court to stay proceedings was that it would serve judicial economy . . . . The EAC has now made a decision.").) Defendants respond that, while the EAC rejected the requested revisions, it "did not independently consider" Option 1(B) and even "invited" Louisiana to request independent consideration. (Doc. 55 at 1 (quoting Doc. 54-1 at 6).) Louisiana so requested on September 26, 2025—the same day as Plaintiffs responded to the *Notice*. (*Id.* at 2 (citing Doc. 55-1 at 2–3).) Defendants argue that the 60-day stay is warranted given the EAC's reconsideration of Option 1(B). (*Id.*) Separately, on November 20, 2025, Louisiana lodged another request for consideration of Option 1(A). (Doc. 58 at 1.)

### B.  Law & Analysis

Preliminarily, the Court notes that the EAC's rejection of the requested revisions, (*see* Doc. 54-1 at 5–6), did not moot Defendants' stay request, (*cf.* Doc. 54 at 2), because the EAC did not independently consider Option 1(B) and even allowed Louisiana to request independent consideration of this option, (*see* Doc. 54-1 at 6). Louisiana did so. (Doc. 55-1 at 2–3.) But because Defendants have not met their burden of showing that a stay of proceedings is warranted here, the Court now denies the *Motion to Stay*. *See Magana*, 2017 WL 2911353, at *3.

For the most part, Defendants' arguments rely on the assertion that the EAC's decision to approve or reject Louisiana's requested revisions will simplify the issues underlying the instant case. Crucially, though, Defendants cannot guarantee that the EAC will decide Louisiana's requested revisions within the proposed 60-day stay period. (*See* Doc. 46-1 at 4–5 (expressing uncertainty about when the EAC would decide Louisiana's initial request)); *see also Magana*, 2017 WL 2911353, at *4 ("[E]ven if the Court were to grant a stay for a limited period of time, there would still be no guarantee that a settlement with the [Department of Labor] would be reached during that specific time period."). Nor can Defendants guarantee that the EAC will decide

10

Louisiana's requested revisions in a way that simplifies litigation here. (*See* Doc. 54-1 at 6 (rejecting Louisiana's requested revisions but explaining that the EAC "did not independently consider Option 1(B)"); Doc. 55-1 at 2–3 (requesting reconsideration of Option 1(B)); Doc. 58-1 at 2–3 (requesting reconsideration of Option 1(A))); *see also Kobach*, 772 F.3d at 1189 (noting that the EAC rejected similar requests for revisions from Arizona and Kansas). Thus, the Court is not persuaded that the proposed stay will be fruitful.[3]

### 1. *Hardship and Inequity Imposed on Movant if Stay Denied*

But, having weighed the competing interests, *see Landis*, 299 U.S. at 254–55; *see also Abrams*, 2018 WL 2746046, at *3, the Court finds that a stay would not be warranted even if Defendants could guarantee a definitive answer from the EAC within 60 days, (*cf.* Doc. 46-1 at 4–5). First, Defendants have not adequately demonstrated that they will suffer hardship and inequity if the Court denies their *Motion to Stay*. (*See* Doc. 46-1 at 8.) They have merely voiced a general concern about being "burden[ed]" by litigating "EAC-contin[g]ent revisions" while "waiting for a determination from the EAC."[4] (Doc. 46-1 at 8.)

---

[3] The Court also observes that Defendants have already gotten more than they initially requested. That is, more than 60 days have elapsed since the briefing on Defendants' *Motion to Stay*. Given this fact, and given Defendants' inability to guarantee a timely response from the EAC, their continued insistence that a 60-day stay is warranted begs the question whether they are really seeking a moderate and definite stay. *See Wedgeworth*, 706 F.2d at 545 ("[B]efore granting a stay pending the resolution of another [matter], the court must carefully consider the time reasonably expected for resolution . . . in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" (quoting *McKnight*, 667 F.2d at 479)).

[4] Defendants cite *Strong ex rel. Tidewater, Inc. v. Taylor* in support of their argument under the "hardship and inequity" prong. (Doc. 46-1 at 8 (citing *Strong*, 2013 WL 818893, at *4).) *Strong* was a markedly different case, dealing with shareholder derivative litigation. *Strong*, 2013 WL 818893, at *1. It was also in a markedly different posture: The court had already dismissed the plaintiff's claims without prejudice. *Id.* But most notably, *Strong*'s reasoning and result are antithetical to Defendants' argument here. Despite substantial hardships, including the possibility that the plaintiff would have to file another action and that such action might be time-barred, the court in *Strong* denied the plaintiff's motion to stay proceedings pending the results of a board investigation. *Id.* at *3. The court found that, prior to dismissal of the case, the plaintiff "had significant time" to demand an investigation by the board and failed to do so. *Id.* It also found that "allowing th[e] suit to languish" while the board considered the plaintiff's demand would prejudice the defendants. *Id.* at *4. Lastly, the court determined that a stay pending the board's investigation—the effect of which was uncertain—would "disserve[]" judicial economy. *Id.* at *5.

11

This argument is non-specific. *See, e.g.*, *Ashford Inc. v. Unite Here.*, No. 15-262, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015) (denying a motion to stay proceedings pending decision of, *inter alia*, a Rule 12(b)(1) motion, explaining that the movant "ha[d] not carried its burden of showing it w[ould] suffer hardship or inequity . . . and instead ha[d] only detailed the usual inconveniences and costs that are associated with discovery practice"); *see also Magana*, 2017 WL 2911353, at *5 ("Defendants have not carried their burden to demonstrate that the incurrence of litigation expenses associated with the instant action while cooperating with the [Department of Labor's] investigation constitutes undue hardship . . . ."); *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 527 (E.D. Va. 2018) ("[T]he near-certainty of re-litigating complex matters does not alone justify a stay."). It also does not account for the fact that this case is still in its infancy,[5] or that narrower remedies (e.g., a stay of certain discovery) exist. (*See also* Doc. 49 at 10–11.) Lastly, the Court observes that Defendants' argument under the "hardship and inequity" prong is indistinguishable from its argument about judicial economy. *See also Brunswick TKTKonnect, LLC v. Kavanaugh*, No. 22-4, 2023 WL 8582592, at *2 (W.D. Ky. Dec. 11, 2023) ("Defendants' motion puts forth little in the way of showing undue hardship or inequity, and rests almost entirely on the notion that judicial economy warrants a stay of proceedings.").

### 2. *Judicial Economy*

The Court will therefore address the "judicial economy" prong next. While Defendants insist that the EAC's decision will simplify litigation here, they do not explain how they expect it to do so.[6] (*See* Doc. 46-1 at 6–8; Doc. 52 at 5); *see also Magana*, 2017 WL 2911353, at *3

---

[5] Defendants have not even filed their Answer to the Complaint. (*See* Doc. 40 (extending the time to file to July 24, 2025, on which date Defendants filed this *Motion to Stay*).)
[6] Defendants comment on the inefficiency of maintaining different federal and state registration forms and systems, but they nowhere suggest, for example, that they will not seek to revise the State Form if the EAC rejects their requested revisions to the Federal Form. (*See, e.g.*, Doc. 46-1 at 7.)

(explaining that the movant "bears the burden to show that a stay is warranted"). Indeed, Plaintiffs are adamant that "the proceedings . . . do not depend on the EAC's determination," because any decision by the EAC will not affect the bulk of Plaintiffs' claims (i.e., the vagueness challenge and the challenges to the State Form). (*See* Doc. 49 at 10–11); *see also Magana*, 2017 WL 2911353, at *5 (Where the Department of Labor was already investigating the defendants for compliance with the Fair Labor Standards Act: "Defendants have not presented any evidence of the DOL's findings or the contents of a potential settlement. Moreover, Defendants have not shown that the DOL settlement would render most, much less all, of the potential opt-in plaintiffs' claims moot such that it would be inefficient to proceed with the instant litigation at this time."). Having reviewed the Complaint, the Court is inclined to agree with Plaintiffs. (*See* Doc. 1 at 42–48, ¶¶ 179–221.)

Relatedly, the Court disagrees with Defendants' assertion that granting a stay here would be "consistent with" granting a stay in a case where the legal landscape is shifting or may soon shift. (*See* Doc. 46-1 at 7–8 (citing, *inter alia*, Order (Doc. 752) at 1, *Clark*, No. 3:86-cv-00435).) Defendants have not shown that the EAC is likely to deviate from its past decisions. *See, e.g.*, *Kobach*, 772 F.3d at 1189 (noting that the EAC rejected similar requests for revisions from Arizona and Kansas). Nor have Defendants explained how deviation would affect the instant case. *See also Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 139 (D.D.C. 2016) (deeming arguments about the effects of a pending appellate court decision "highly speculative"). For their part, Plaintiffs anticipate that, "were the EAC to grant Defendants' request, it would only spur further litigation." (Doc. 49 at 14.)

Plaintiffs also express concern that a stay will "undermine" judicial economy by prolonging inevitable litigation. (*Id.* at 16.) The Court agrees. *See also Gibbs*, 331 F. Supp. 3d at

526 ("Although denying a stay can risk waste, the opposite can also be true: *[G]ranting* a stay may waste judicial resources.").

### 3. *Prejudice to Non-Movant if Stay Granted*

Third, the Court considers the "prejudice" prong. Plaintiffs explain that they "have already diverted"—and are continuing to divert—resources away from their "core activities" and toward ascertaining what Act 500 will require. (Doc. 49 at 11.) Likewise, they are currently using resources to "educate constituents and other community members" about registration "under Act 500's new proof of citizenship requirement." (*Id.* (citing Doc. 49-1 at ¶¶ 5, 7, 10).) Planning voter registration activities and allocating resources to such activities must occur "well in advance" of Louisiana's proposed effective date for the Federal Form revisions—January 15, 2026. (*Id.* at 15 (citing Doc. 1 at ¶¶ 19, 36; Doc. 49-1 at ¶¶ 7, 9, 11).) The fact that no new registration requirements will go into effect before January 15, 2026, is therefore irrelevant. (*Cf.* Doc. 52 at 5–6.)

The Court disagrees with Defendants' argument that a stay would not be prejudicial because it was reasonably foreseeable that Defendants would seek it. (*See* Doc. 46-1 at 9 (citing *FEDCON*, 2017 WL 897852, at *3).) The fact that a defendant's litigation strategy is foreseeable does not make its effects any less prejudicial. And the only authority which Defendants cite in support of their contention—*United States v. FEDCON Joint Venture*—is easily distinguishable. *See* 2017 WL 897852, at *1–3. In that case, the parties had entered a sub-contract, the terms of which "explicitly provide[d] for a stay of all litigation" in order to allow for a dispute resolution process to run its course. *Id.* at *2. In granting the stay, the court noted that delay was prejudicial but not "unduly" so, because it was contemplated by the parties when they entered into the sub-contract. *See id.* at *3. Here, by contrast, Plaintiffs did not agree to a stay ahead of time, and the prejudice extends beyond mere delay.

14

The Court also disagrees with Defendants' argument that, *ipso facto*, "short delays are not prejudicial." (*See* Doc. 46-1 at 11 (citing *Falgoust*, 2000 WL 462919, at *2).) Notably, *Falgoust v. Microsoft Corp.* does not support Defendants' position. *See* 2000 WL 462919, at *2. There, the court acknowledged that the "slight delay" *was* prejudicial. *Id.* It just was not so prejudicial as to tip the balance in the plaintiffs' favor. *See id.* ("Plaintiffs have failed to show any significant prejudice they would suffer, *beyond the slight delay* pending the [Judicial Panel on Multidistrict Litigation's] decision." (emphasis added)).

Lastly, the Court notes its agreement with Plaintiffs that a stay would "prolong" Plaintiffs' injuries and could "impair this [C]ourt's ability to issue effective relief later." (Doc. 49 at 14 (quoting Order on Motion to Stay (Doc. 40) at 3, *Petteway*, No. 3:22-cv-00057)); *see also Voice of the Experienced v. Ardoin*, No. 23-331, 2023 WL 7367541, at *2 (M.D. La. Oct. 6, 2023) (In the context of a motion to stay discovery: "With such a relatively short time before the relevant election, any delay in litigation could harm Plaintiffs' ability to obtain relief . . . ."). Altogether, then, Defendants have not shown that the "hardship and inequity" and "judicial economy" prongs militate in favor of a stay. Plaintiffs, on the other hand, have shown that they would be prejudiced by a stay. Thus, the "competing interests" weigh against a stay. *See Landis*, 299 U.S. at 254–55.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that *Defendants' Motion to Stay Proceedings* (Doc. 46) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>December 8, 2025</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**